Louise LAMPHERE, Plaintiff-Appellee,

v.

BROWN UNIVERSITY et al.,
Defendants-Appellants.

No. 79–1283.

United States Court of Appeals,
First Circuit.

Argued Oct. 2, 1979.

Decided Dec. 6, 1979.

See also, 1 Cir., 553 F.2d 714.

J. Harold Flannery, Boston, Mass., with whom Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., Peter J. McGinn, Richard A. Sherman and Tillinghast, Collins & Graham, Providence, R. I., were on brief, for defendants, appellants.

Milton Stanzler, Providence, R. I., with whom Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., was on brief, for plaintiff, appellee.

Before ALDRICH and BOWNES, Circuit Judges, BONSAL,* District Judge.

ALDRICH, Senior Circuit Judge.

Plaintiff Lamphere, a female faculty member of Brown University in Providence, Rhode Island, brought a class action in the district court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging discrimination against women with respect to tenure. Lengthy discovery and other pretrial proceedings, preparation and negotiations, occupying in total over 3,500 hours, led eventually to a settlement and consent decree. Three plaintiffs obtained tenure and substantial back pay awards; a fund was set up to pay other members of the class upon proof, and an elaborate administrative procedure was established for the general avoidance, handling, and disposing of such matters by the University in the future.[1] The decree, including the detailed procedures, occupied 60 pages. It required defendant University to pay "reasonable attorneys' fees incurred by the Plaintiff and class members . . . together with costs and disbursements." The parties failing to agree on an amount, there was a hearing, followed by an award, including substantial costs, totalling $272,600, from which defendant University appeals.

■ Without going into the details, we agree in general with the district court's approach.[2] It was within the court's discretion to add a 10% supplement to its determined hourly charges for the contingency factor. See *King v. Greenblatt,* post, 560 F.2d at 1026 (factor (6)). Also, it was not error to award fees for the time spent by counsel in an unsuccessful attempt to broaden the scope of remedies available under the decree. This issue was all part and parcel of one matter—counsel should not be penalized for every lost motion. This is not the same as a case where claims are truly fractionable. *Cf. Nadeau v. Helgemoe,* 1 Cir., 1978, 581 F.2d 275. At the same time, this is not to say that in determining fees the degree of success is not relevant. *See King v. Greenblatt,* 1 Cir., 1977, 560 F.2d 1024, 1027, *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161, item (8) (1978).

■ Two individual matters require more attention. Counsel received a modest

---

* Of the Southern District of New York, sitting by designation.

1. A question that came up before the end of the case was whether this procedure was to be exclusive; some of the class plaintiffs contending it was not. The issue was litigated, and defendants prevailed.

2. No point has been made of it, but the court seemingly misunderstood factor (4) in *King v. Greenblatt,* 1 Cir., 1977, 560 F.2d 1024, 1026, *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

"4) the preclusion of other employment by the attorney due to acceptance of the case." The court found, "The heavy time demands of this case inevitably resulted in a loss to [plaintiff's counsel] of other, possibly more profitable, business." Factor (4) is not relevant unless counsel affirmatively establish not merely that they lost business, but that the foregone opportunities would have been more profitable than what the court otherwise would propose to award.

retainer; in addition, volunteers contributed funds to meet costs. Defendant is not entitled to credits for these sums, regardless of what arrangements, vel non, there may have been for repayment. While it is true, of course, that the contingency factor was removed, pro tanto, from this part of the fee, nevertheless the contributors were not making a gift to the defendant. It is not entitled to a credit. *Cf. Goldstein v. Gontarz*, 1974, 364 Mass. 800, 808–9, 309 N.E.2d 196 and cases cited. Indeed, a defendant is not even entitled to deduct receipts from a a purely collateral source to which it has itself contributed. *Russo v. Matson Navigation Co.*, 9 Cir., 1973, 486 F.2d 1018. What counsel may do with the payments if recovered from the defendant as the result of a court order lies between them and the contributors.

The second, a somewhat different question arises with respect to paralegals, including law students. Counsel paid some $12,000 to paralegals not regularly in their employ.[3] The court found the paralegals' work necessary and compensable, which defendant does not contest. However, it awarded some $32,000, finding this to be the "fair and reasonable" value of their time on an hourly basis, although "such a rate is approximately three times the amount that the firm paid." The court observed, "The paralegals . . . apparently volunteered a good deal of their time, and were paid at very low hourly rates. . . . Because there is no plan to further compensate the paralegals, any higher award only would constitute a windfall to the attorneys." Nevertheless, the court made the higher award.

Both parties seize on the last-quoted language. Defendant points to the "only," and says counsel should not receive a windfall on nonlegal expenses. Plaintiffs say that there was no windfall, that they had in fact agreed to pay over any excess receipts to the paralegals, and that the record at least

so suggested. While this may be questionable, we will assume plaintiff correct.

■ Accordingly, we face the question whether, if nonlawyers volunteer personal services at less than what may be thought a fair and reasonable rate, but with the hope that they will share in the recovery, we should apply the same rule we have recognized, ante, for tangible donations and hold that an award of costs should be at whatever amount is found to be the fair rate. It takes but little imagination to realize that this could be a very complicated, difficult, and perhaps dangerous principle, however fair it might be in the present case. Defendants would always be faced with a claim that services had been underpaid. We therefore limit our holding to volunteered cash contributions; the excess paralegal awards over the actual payments must be eliminated, regardless of the arrangements.

■ Finally, we deal only briefly with counsels' hourly rates. No useful purpose would be served by rehearsing the details. We are somewhat surprised that the court equated the City of Providence with Boston, a city with an unenviable reputation for high costs. Further, we have a general feeling that both rates—most particularly that for the younger Mr. Stanzler—and the total, were on the generous side. If the consent decree had not involved much more than the dollar recovery, present and future—calculated for us, incidentally, by plaintiffs without discounting[4]—we would think the allowance over-generous. However, each case must stand on its own bottom, and we are not prepared to find an abuse of discretion here.

*Affirmed, except as to paralegals.*

---

3. This opinion does not relate to salaried paralegals in counsel's own office, and whether such are part of the overhead included in counsel's hourly charge.

4. We were even more surprised at the size of the fee counsel requested, over twice what the court allowed.