**Warren H. WHEELER et al., and C. C. Spaulding, III et al., Plaintiffs,**

v.

**The DURHAM CITY BOARD OF EDUCATION et al., Defendants.**

Nos. C–54–D–60, C–116–D–60.

United States District Court,
M. D. North Carolina,
Durham Division.

Aug. 20, 1980.

Julius LeVonne Chambers, Charlotte, N. C., Conrad O. Pearson, and William A. Marsh, Jr., Durham, N. C., for plaintiffs.

Marshall T. Spears, and Jerry L. Jarvis, Durham, N. C., for defendants.

## MEMORANDUM OPINION

GORDON, Chief Judge.

This matter is before the Court on plaintiffs' motion for judgment on the mandate. The relevant history of this litigation which stretches back to 1960 may be found in the opinion of the Court of Appeals, *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618 (4th Cir. 1978) and in Appendix I of this opinion. In accordance with the mandate of the Court of Appeals, the Court has computed a fee award, including reasonable expenses, under provisions of 20 U.S.C. § 1617. The Court finds a reasonable attorneys' fee to be $37,394.00; and reasonable litigation expenses to be $3,642.40. Costs are taxed against the defendant in the amount of $4,051.81.

## DISCUSSION

The opinion is organized in terms of the twelve guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

■ 1. *The time and labor required.* The Court accepts the representation of counsel for plaintiffs that from February, 1972, until the present time 906.75 hours of attorney time have been expended in the performance of legal work directly related to this litigation. The attorneys for plaintiffs have appeared to be candid and honest throughout the course of the litigation. As it has come to expect good faith on their part in all aspects of the proceedings, the Court now believes that plaintiffs' counsel have made a good faith effort to estimate conservatively and accurately the time spent on the case. *Accord, Harkless v. Sweeny Independent School District*, 466 F.Supp. 457, 473 (S.D.Tex.1978), *aff'd*, 608 F.2d 594 (5th Cir. 1979). The defendant City Board objects to any hours other than those claimed by persons in the Chambers law firm on the ground of duplication of effort. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). The Court has considered carefully the possibility of duplication. The mere fact, of course, that two or three attorneys spent time on the same matter is not necessarily unreasonable. *See generally Unemployed Workers Organizing Committee v. Batterton*, 477 F.Supp. 509, 515 (D.Md. 1979). In a thorough review of the official file of the consolidated cases, it is apparent not only that plaintiffs' counsel's estimate of time appears reasonable to one who has had some experience as a practitioner and who has been involved in the litigation during the entire period under present consideration, but also that several attorneys for whom no hours are claimed have made appearances and performed services on behalf of the plaintiffs. (Adam Stein, James C. Fuller, Jr., and Louis L. Lesesne, Jr. are called to the attention of counsel.) For these reasons, the Court does not find the hours listed to be duplicative.

As will be developed in the course of the opinion, not all of these hours are compensable, but they are the starting point from which the Court began its calculation of a reasonable fee.

2. *The novelty and difficulty of the questions.* The issues in this case are not characterized easily. On one hand, it may fairly be said that the consolidated lawsuits comprise some of the most complex legal, moral, and political issues of the twentieth century. Desegregation of public schools has been accomplished only by a tremendous expenditure of resources—judicial and non–judicial, material and non–material. If the issues involved were simple, the applicable federal decisions would not cover thousands of pages in the official reporters spanning the last thirty–five years. A shepardization of this litigation itself reveals eleven reported decisions. On the other hand, defendants urge that the issue during the period for which the plaintiffs may be awarded fees is a simple one: whether the reassignments made pursuant to the 1970 decision were sufficient to accomplish a unitary system in Durham city schools. It is not inaccurate to say that, after three years of litigation from 1972 to 1975, the issue reduced to that concise statement. Whether that issue as framed is "simple" is problematical. Moreover, when this round of the litigation began in 1972, plaintiffs were calling on the federal judiciary to cope with a social phenomenon then becoming manifest throughout the country: "white flight" to private schools and "black flight" to suburban public schools, with unfortunate consequences for inner–city schools. *Wheeler v. Durham City Bd. of Educ.*, 379 F.Supp. 1352, 1367 (M.D.N.C. 1974). This Court found as a fact that the schools could be desegregated more effectively by either extending the city unit to the city limits or merging the county and city units. *Id.* at 1367–68. That the relief sought proved ultimately to be outside the power of the Court to grant does not detract from a finding that the questions

presented to the Court by the plaintiffs were both very novel and very difficult.

The Court further finds that the issues raised in the phase of the litigation concerned with a reasonable attorneys' fee were significant. Although plaintiffs failed in their effort to win a fee award computed from the inception of the first lawsuit in 1960, they did succeed in winning the first clear holding by the Fourth Circuit that "the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses." *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623–24 (4th Cir. 1978).

3. *The skill requisite to perform the legal service properly.* The Court has observed the work product, the preparation, and the general ability before the Court of the attorneys for plaintiffs since 1972, and finds the level of skill displayed to be excellent. Although it is the Court's experience (and good fortune) that excellence in representation is often the norm in this District, it cannot be gainsaid that the representation afforded the plaintiffs in this case was advocacy in its highest form. It may be argued that the highest level of skill was not an absolute requirement for the presentation of the case, but more time certainly would have been expended by the Court as well as the attorneys had plaintiffs' counsel been less competent.

4. *The preclusion of other employment by the attorneys due to acceptance of the case.* No showing has been made that plaintiffs' counsel lost otherwise available business because of conflicts of interest resulting from their appearance in the instant case. Any case undertaken by a lawyer requires time and effort for the client's behalf that is necessarily lost for other purposes. This guideline assumes significance, however, only when the "lost opportunities" are demonstrated to be more profitable than the award made by the Court. *Lamphere v. Brown University*, 610 F.2d 46, 47 n.2 (1st Cir. 1979). Although the hourly rates charged by the attorneys are greater than the rates used by the Court in its computation of the award, and not all the hours claimed are compensable, the Court cannot assign great weight to these considerations in the absence of some more specific showing of lost business. Because plaintiffs' counsel's practice is composed to a great degree of civil rights and discrimination cases, for many of which the attorneys are compensated in the same manner as this case, the Court cannot presume that this case resulted in lost profits.

5. *The customary fee.* Clearly, there is no "customary fee" for bringing an action to cause a local school district to conform to the mandates of evolving desegregation law. Under this guideline, therefore, as both parties have indicated, the Court must consider the hourly rates customarily charged for federal litigation. Counsel for plaintiffs represent that normal hourly billing rates charged by them are $75.00 per hour for all attorneys other than Mr. Wallas; and $65.00 for Mr. Wallas. The defendant has submitted affidavits from attorneys in Durham which reflect rates from $30.00 to $50.00 per hour, ranging from 1972 to the present and depending on whether the time is spent in or out of court. Fee awards made by this Court in the past have usually fallen within the $30.00 to $60.00 range, though the Court recognizes that the average derived from that range is somewhat low, in light of the fact that it is not unheard of for attorneys to be compensated at a rate in excess of $100.00 per hour for courtroom time. It is nearly as difficult for the Court, in fact, to determine what is the "customary fee" in a given locality for federal litigation as to fix a "reasonable attorneys' fee" for the matter at hand. The defendant does not make the Court's job easier by setting forth seventeen categories of legal tasks for which they assert a separate hourly value could be given. Although recognizing that it is very often the situation that lawyers do charge basically two rates—one for in–court and one for out–of–court time—the Court in its discretion determines the instant award based on a single rate, which rate depends on the

individual attorney.[1] That rate, of course, is not necessarily the "customary fee," even if such a rate were ascertainable, for in this Circuit, this guideline is only one of twelve to be considered. *Cf. Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 636–39, 642–43 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 166–69 (3d Cir. 1973).

6. *Whether the fee is fixed or contingent.* No fee or percentage of recovery was agreed to be paid to counsel by the plaintiffs in this case. The plaintiffs were nominal plaintiffs only. Some payments have been made to plaintiffs' counsel by the NAACP Legal Defense Fund, and plaintiffs are obligated to repay these advances. *Accord, Sherrill v. J. P. Stevens & Co.*, 441 F.Supp. 846, 849 (W.D.N.C.1977), *aff'd*, 594 F.2d 858 (4th Cir. 1979). At any rate, the sums advanced to the plaintiffs were not intended as a gift to the defendant. *Cf. Lamphere v. Brown University*, 610 F.2d 46, 48 (1st Cir. 1979) ("What counsel may do with the payments if recovered from the defendant as the result of a court order lies between them and the contributors.")

Counsel for plaintiffs argue that the contingency of the matter is underscored by the circumstance of having waited years for their fee, with *any* recovery being uncertain for much of that time. This argument points up one of the difficulties in fixing a reasonable fee for litigation stretching back to 1972: adjusting the fee to reflect the rise in rates charged by attorneys in recent years. As indicated above, the Court fixes the instant award based on a single rate for each attorney. This rate is one that the

Court concludes is an appropriate "current" rate based on all the factors under discussion. "This use of current rates simplifies the Court's task and roughly counter–balances the inflationary loss suffered by the attorneys because of the long delay in the recovery of their fees." *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 395, 402 (D.D.C.1978). *But see Vecchione v. Wohlgemuth*, 481 F.Supp. 776, 790 (E.D.Pa.1979).

7. *Time limitations imposed by the client or the circumstances.* It is apparent from a review of the file that much of the work done by plaintiffs' counsel in this case was priority work that delayed other legal work. There were multiple deadlines resulting from the five hearings, thirty–one depositions, a five–day trial, and two appeals that took place during the phase of this litigation for which plaintiffs may be awarded fees. This type of deadline pressure is not atypical of most complex federal litigation, however, and the hourly rate set by the Court takes the time limitations into account.

8. *The amount involved and the results obtained.* Making an appropriate determination under this guideline has been the most difficult of the twelve. It is clear that the mandate from the Court of Appeals is "to consider the degree of the plaintiffs' success in fixing the award." 585 F.2d at 624. "[T]he fee awarded plaintiffs should be in an amount which reflects that some of the services were rendered with respect to issues on which plaintiffs did not prevail." *Id.* at 619. Indeed, the Fourth Circuit's adherence to the proposition that the amount of an attorneys' fee award should be proportionate to the extent to which

---

1. The Court notes that fee awards are often increased by a "bonus" or "enhancement" percentage. *See, e. g., Reynolds v. Abbeville County School District No. 60*, 17 EPD ¶ 8389, at 5970–71 (D.S.C. March 16, 1978). In *Reynolds*, Judge Hemphill calculated the fee award at different rates for "trial and appeal related hours" and for travel time. *Id.* at 5970. He then awarded a ten per cent bonus of that total because "almost all of the factors listed in . . . the *Johnson* decision weigh[ed] in favor of an enhanced award, and none weigh[ed] in favor of a decreased award." *Id.* at 5971. A similar procedure might have been appropriate in the case at bar, had the Court made its calculations in terms of lesser rates for out–of–court time such as travel time, because the *Johnson* guidelines discussed here do favor a substantial award for plaintiffs. Though the instant award is calculated on the basis of a single rate for all hours for which an individual attorney may be compensated, the Court expressly concludes that the total award is reasonable and just under the circumstances. *See Conclusion, infra* at 35.

plaintiff prevails in the suit was reaffirmed in the recent case *Frith v. Eastern Air Lines, Inc.*, 611 F.2d 950 (4th Cir. 1979). In *Frith*, because the Court of Appeals had reduced plaintiff's recovery from $51,113.63 to $1,113.63, it directed the district court to reconsider the amount of the fee award. In the instant case, of course, there is no "amount involved" as there was in *Frith*, and it is impossible to place a dollar value on a desegregated and unitary school system—the "results obtained." In that regard, it can be said only that the lawsuit involved matters of the highest importance and significance.

The idea that a fee award should be reduced if plaintiffs do not prevail on all the issues has been criticized by the Sixth Circuit in *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 635–636 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

"The fact that some of [the] time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant . . . unless the positions asserted are frivolous or in bad faith. . . . [The] mandate is best served by encouraging attorneys to take the most advantageous position on their clients' behalf that is possible in good faith. The fact that these lawyers advocated a desegregation remedy of broader scope and faster pace than was ultimately adopted cannot be considered to be unreasonable. Their clients have prevailed; the . . . school system is desegregated."

*Id.* at 636. As Judge Peck recognized in *Northcross*, it is apparent that there is some confusion in the cases between the idea of prevailing on issues in order to be a "prevailing party" and entitled to attorneys' fees at all, and the idea that the award should be proportionate to the extent of the recovery. *See, e. g., Taylor v. Goodyear Tire & Rubber Co.*, 6 FEP Cases 672 (N.D. Ala.1973). The latter idea was first articulated in *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1008 (9th Cir. 1972), a sex discrimination in employment suit in which the district court was directed to reconsider its award of attorneys' fees in view of the appellate court's ruling that the plaintiff was in fact entitled to a portion of the back pay claimed by her. The district court had allowed only one–third of plaintiff's itemized fee claim without explanation for the reduction. From *Schaeffer*, other courts have extrapolated the proposition that plaintiffs are entitled to attorneys' fee awards only for issues on which they prevail in a multi–issue lawsuit. *E. g., Hyland v. Kenner Products Co.*, 13 FEP Cases 1647, 1651 (S.D.Ohio 1976). It is, of course, one thing to say that fees should be proportionate to the amount involved, when the case is a suit for damages and the amount recovered is relatively a trifling sum. It is another matter to say that an attorneys' fee should be proportionate to the issues "won" by plaintiffs in a multi–issue employment discrimination suit in which such disparate "issues" as job classification, reinstatement, back pay, seniority rights, and retaliatory discrimination might be before a court. It is yet another to say that when the object of the suit is desegregation of public schools, then attorneys' fees may be awarded only for efforts spent propounding types of relief that are ultimately put into effect in the defendant school district. In the first of these three examples, (a suit for damages which recovers a small sum) a consideration of "the amount involved and the results obtained" is properly taken into account as *Johnson's* eighth guideline. In the second (multi–issue employment discrimination suit) and third (school desegregation suit) examples, trial judges have a more difficult task in the application of the eighth guideline. Basing the fee in direct proportion only to what plaintiffs have "won" in those examples is an abandonment of considering the dozen *Johnson* criteria as a whole. Moreover, the emphasis that is placed on "winning" in those circumstances is a threshold consideration that must be reached in determining whether a particular plaintiff is a "prevailing party" in the first place—a determination that should be made before courts engage in evaluating

the entire case by means of the *Johnson* guidelines for purposes of fixing a reasonable fee. *See Paxman v. Campbell*, 612 F.2d 848, 864 (4th Cir. 1980) (Haynsworth, C. J., concurring and dissenting); *id.* at 874 (Winter, J., concurring and dissenting) ("The extent to which plaintiffs obtained all of the relief they sought is only one of many factors to be considered in setting an attorney's fee."); *Brown v. Bathke*, 588 F.2d 634, 637 (8th Cir. 1978). In cases where equitable relief is sought, perhaps "what was at stake and what was achieved" is a more useful phrase than "the amount involved and the results obtained." The latter phrase has been interpreted at times in a way that has penalized attorneys for seeking forms of relief not granted by the courts precisely, though the overall result achieved might have been the vindication of substantial rights of plaintiffs. In a changing area of law, attorneys should not be penalized for failure to foreknow the extent of the relief a court will grant. Vigorous advocacy of opposing points of view is the heart of the adversary system of justice. *See Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). *See generally Allen v. Terminal Transport Co.*, 486 F.Supp. 1195, 1199–1200 (N.D.Ga.1980).

■ In the matter now before the Court, however, the situation is not just one of the plaintiffs' having prevailed on certain issues, but of having prevailed only against one of two predominant defendants. In the instant case, it would be manifestly unfair to assess the City Board for fees incurred against the County Board. This Court has found as a fact that in the phase of the

litigation between plaintiffs and the County Board since 1972, the County Board was the prevailing party. Memorandum, dated Mar. 1, 1977, at 6. The ruling that no fees could thus be levied against the County Board was not appealed. 585 F.2d at 620 n. 2. The City Board, perhaps with some justification,[2] fears that it will be assessed for attorneys' fees incurred by plaintiffs against another party against whom the plaintiffs did not prevail. This Court further believes that this concern is the basis for the Fourth Circuit's cautionary words regarding "issues on which plaintiffs did not prevail."

■ The case against the City Board was opened in 1960; the case against the County Board in 1963. On September 9, 1973, the cases were consolidated by agreement. It had become obvious during the latter part of 1972 that the relief sought by plaintiffs, though the gravamen of their Motion for Relief filed in July, 1972, was that *city* schools were not in compliance with applicable desegregation law, was a matter which might involve both the county and city school districts. Specifically, the plaintiffs sought one of three alternate forms of merger of the county and city systems. The relief ultimately granted in the consolidated suit was that city schools were ordered to desegregate effectively and not to maintain any racially identifiable schools. Thus, as between the major parties in the litigation, plaintiffs "prevailed" against the City Board, but did not prevail against County Board.

The Court has not found any case which exactly parallels this one that details a procedure for allocating the fee award.[3] Hav-

2. The defendant and the Court of Appeals have cited language from this Court's Memorandum, dated Mar. 1, 1977, at 8. "[Plaintiffs] are entitled to be paid by the City Board a reasonable attorneys' fee for *all services rendered by them in this litigation* since July 1, 1972. . . ." (Emphasis added.) The Order of the same date, however, expresses the Court's intention at the time with more clarity. "It is further ordered that the plaintiffs have and recover their costs and a reasonable attorney's fee for *service rendered in the litigation against the*

*Durham City Board of Education.* . . ." (Emphasis added.)

3. One of the cases cited by the Court of Appeals [585 F.2d at 624], *Williams v. General Foods Corp.*, 492 F.2d 399 (7th Cir. 1974), mentions that the plaintiff could be eligible to receive a discretionary attorneys' fee award from the corporate employer defendant, but not from the Union defendant, since the complaint against the Union was properly dismissed. No subsequent history of this case is reported, so it

ing considered carefully the mandate from the Court of Appeals, the cases cited therein, the briefs and affidavits thereto, and the materials of record in the case since 1972, the Court concludes that the most expeditious means of apportioning the fee is to consider the litigation since 1972 in time frames and to estimate what portion of the claimed expenses and attorney hours in each "litigation era" may fairly be recovered from the defendant City Board. It is understandable that plaintiffs did not keep separate hours and expenses for each defendant school board, for in the eyes of all concerned at the time, the case was an indivisible whole. The defendant has provided the Court with notations on Exhibit A to its Brief in Opposition, filed April 23, 1979, which reflect the defendant's views on the proper percentage of time allocable to the City Board. It is important to recognize, however, that plaintiffs' primary concern was always the racial balance in *city* schools, and that county schools became involved in the suit chiefly because the plaintiffs' suggested plans for alleviating city school discrimination called for the participation of some or all county schools. The Court has made its percentage calculations with this thought in mind, as well as the realization that even if plaintiffs' efforts had been directed equally at county and city schools, more than half the effort would be expended in pursuing either one individually. The Court's detailed findings are set forth as Appendix I.

9. *The experience, reputation, and ability of the attorneys.* The plaintiffs' attorneys are well-known to this Court from their participation in this and other matters. William A. Marsh, Jr., Conrad O. Pearson, and the late M. Hugh Thompson, members of the Durham County Bar, have been attorneys of record in this litigation since 1960. Mr. Pearson is now retired.

The plaintiffs' cause has been well represented by these attorneys. During the phase of the lawsuit for which plaintiffs may be awarded fees, Julius L. Chambers has taken the laboring oar. Mr. Chambers has much experience in civil rights, and particularly school desegregation, litigation. His reputation and ability are excellent. Mr. Chambers' associate, Jonathan Wallas, has worked on the case since the latter part of 1976 on the fee application and the latest appeal. His contributions have been notable, and the Court considers him to be an expert in civil rights litigation. Primarily because of his greater experience, but also for his greater expertise, Mr. Chambers is awarded a higher hourly rate than the other attorneys.

10. *The "undesirability" of the case.* Although civil rights cases were cited by the *Johnson* court [488 F.2d at 719] as the sort of cases for which attorneys might be stigmatized, the Court finds no such effect on plaintiffs' attorneys in this case. Plaintiffs' attorneys are known for their civil rights work, and in the Court's opinion, respected for it.

11. *The nature and length of the professional relationship with the client.* This guideline is of little relevancy in the instant case, for the plaintiffs were nominal plaintiffs only. The defendant correctly points out that plaintiffs' attorneys have a longstanding relationship with the NAACP Legal Defense Fund. Since payments from the Fund must be reimbursed, however, that relationship is not analogous to one in which a lawyer may "discount" certain work to a client because of the likelihood of a continuing profitable association.

12. *Awards in similar cases.* The Court has considered the awards made in all fee award cases heretofore cited in this Memorandum Opinion, as well as the award in *Swann . v. Charlotte–Mecklenburg Bd. of*

---

is impossible to determine how or whether an allocation was made.

In *Busche v. Burkee*, 483 F.Supp. 1326 (E.D. Wis.1980), the defendant objected to the fee award partially because the plaintiff "did not get judgment against all of the originally named defendants." *Id.* at 1328. The district

court cited *Northcross*, but emphasized also that a "single incident . . . formed the basis for the action." *Id. Busche* may thus be contrasted with the instant case in that the relief sought from the County Board could be had only from the County Board.

*Educ.*, 66 F.R.D. 483 (W.D.N.C.1975). No case, of course, is factually and legally identical to the one at hand. In light of those awards and considering the facts and special circumstances of those cases and this one, however, the Court concludes that the fee hereby awarded is a reasonable one.

## CONCLUSION

■ The Court notes finally that it is impossible "to reduce the calculation of a reasonable fee to a mathematical precision." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). As is apparent in the appendices, the Court has engaged in a great deal of mathematical calculation in ascertaining the instant award. Plaintiffs no doubt will wish that the Court had expressed its calculations of the *multiplier* at a greater hourly rate; the defendant will desire that the *multiplicand* of reasonable hours had been a smaller number. The Court believes that reasonable persons could differ about the hourly rate and the number of hours. It is the conclusion of the Court, however, that even if the multiplier and multiplicand were adjusted, the *product* calculated as the total attorneys' fee award is reasonable and just under the circumstances of the instant case.

For the foregoing reasons and for the reasons set forth in Appendix I and Appendix II, the Court therefore concludes that it is reasonable to compensate Julius LeVonne Chambers for 397.9 hours at the rate of $60.00 per hour for a total of $23,874.00; Conrad O. Pearson for 73.8 hours at the rate of $50.00 per hour for a total of $3,690.00; William A. Marsh, Jr. for 90.9 hours at the rate of $50.00 per hour for a total of $4,545.00; M. Hugh Thompson for 2.8 hours at the rate of $50.00 per hour for a total of $140.00; and Jonathan Wallas for 102.9 hours at the rate of $50.00 per hour for a total of $5,145.00. The Court concludes that reasonable expenses to be awarded the plaintiffs are $3,558.40 to the firm of Chambers, Stein, Ferguson & Becton, P. A.; and $84.00 to William A. Marsh, Jr. Costs are taxed against the defendant City Board in the sum of $4,051.81.

## APPENDIX I

### ANALYSIS OF CLAIMED ATTORNEYS' FEES AND EXPENSES

A. February, 1972–July, 1972.

The Court of Appeals has directed that plaintiffs' attorneys be compensated for work done in preparation of the Motion for Further Relief, filed in July, 1972, which opened the round of litigation for which fees may be awarded. 585 F.2d at 623. This motion was directed to the city schools, though the relief sought asked that the "city–out" (a term used to describe the area of the City of Durham within the boundaries of the Durham County Administrative School Unit) students be placed under the authority of the City Board. The County Board was not named as a defendant. The Court concludes that plaintiffs' attorneys should recover 100 per cent of their claimed expenses and hours. [For ease of presentation, the attorneys are identified by initials: JLC–Julius LeVonne Chambers; COP–Conrad O. Pearson; WAM–William A. Marsh, Jr.; MHT–M. Hugh Thompson; JW–Jonathan Wallas.]

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 28 | JLC | 22.7 | JLC | 28 |
| COP | 15 | | | COP | 15 |
| WAM | 15 | | | WAM | 15 |
| | 58 | | 22.7 | | 58 |
| Expenses: | | | | | |
| $255.95 | | | | $255.95 | |

The defendant has proposed that the attorneys confer on the matter of expenses after the Court decides the matter of the fee award. The Court is reluctant to forgo its responsibility to ascertain litigation expenses in light of the clear holding of the Fourth Circuit's mandate. *See* 585 F.2d at 623–24. In view of defendant's refusal to talk with plaintiffs' counsel or to acknowledge their letters following remand of this action, there is little, if any, expectation that anything helpful could result from a conference. Indeed, it has been the experience of this Court that in the majority of cases of this type, counsel have been able to agree on a reasonable fee without the intervention of the Court.

APPENDIX I—Continued

B. August, 1972–November, 1972

The plaintiffs moved to add the County Board as a defendant. A conference was held at which this motion was granted, and a time was set to file a supplemental complaint so that the County Board could respond to it. Plaintiffs deposed both school superintendents. The primary relief sought was to bring city–out students (who constituted 29 per cent of the county school enrollment) into the city system. The major concern of the plaintiffs was discrimination in city schools. The Court concludes that plaintiffs' attorneys should recover 80 per cent of their claimed expenses and hours.

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 63 | JLC | 34.8 | JLC | 50.4 |
| COP | 25 | | | COP | 20 |
| WAM | 24 | | | WAM | 19.2 |
| | 112 | | 34.8 | | 89.6 |
| Expenses: | | | | | |
| $550.36 | | | | $440.29 | |

C. December, 1972–July, 1973

Plaintiffs filed the supplemental complaint asked for by the defendant City Board. The complaint prayed for relief in one of three optional forms: (1) an order making the city school district and the city limits coterminous; (2) an order merging the county and city districts; or (3) an order which would interchangeably assign pupils between the county and city schools. The complaint was followed by a massive round of motions to dismiss on behalf of all defendants. During May, plaintiffs deposed 29 persons: 6 members of the City Board; 5 members of the County Board; the city manager; the mayor of Durham; 9 members of the City Council; the county manager; 4 members of the County Board of Commissioners; the State Superintendent of Public Instruction (a named defend-ant); and the Chairman of the North Carolina State Board of Education. In July, the motions to dismiss were denied, though the defendant City Council was given leave to renew its motion following discovery; the City Board was ordered to file plans for further desegregation; and the plaintiffs' motion to have a hearing on interim relief for the city schools was granted.

During this time frame, the focus of the plaintiffs began to shift more to concern about county schools, though the major emphasis in regard to the county was still how the situation in county schools affected the city schools. The Court concludes that plaintiffs' attorneys should recover 70 per cent of their claimed expenses [1] and hours.

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 174 | JLC | 46.1 | JLC | 121.8 |
| COP | 32 | | | COP | 22.4 |
| WAM | 26 | | | WAM | 18.2 |
| MHT | 4 | | | MHT | 2.8 |
| | 236 | | 46.1 | | 165.2 |
| Expenses: | | | | | |
| $1,046.59 | | | | $631.03 | |

D. August, 1973–December, 1973

This phase of the litigation concerned the interim relief, the elimination of racially identifiable schools in the city school system, sought by plaintiffs. A hearing was held in October, and in December, this Court issued an order denying the relief. Although plaintiffs "lost this round," the relief sought is essentially what was granted by Order of this Court entered July 17, 1975 (shortly before the Fourth Circuit's decision reported at 521 F.2d 1136 (1975)). The Court concludes that plaintiffs' attorneys should recover 100 per cent of their claimed expenses [2] and hours.

---

1. $145.12 for "additional secretarial assistance" is claimed. In a footnote, the Fourth Circuit indicated that secretarial costs are recoverable only "where an extraordinary need" has arisen. "The district court should require that the necessity for such services be shown before an allowance is made." 585 F.2d at 623 n.7. No special showing has been made to the Court in this regard, and this sum has been subtracted from the claimed expenses before calculating the percentage.

2. The Court of Appeals expressed uncertainty whether "fees and expenses of outside, non–legal consultants and experts" [585 F.2d at 624] would be recoverable in this action. Plaintiffs' attorneys have simplified this Court's task greatly by withdrawing a claim of $2,000.00 for a demographic study conducted during this time.

## APPENDIX I—Continued

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 25 | JLC | 8 | JLC | 25 |
| COP | 2 | | — | COP | 2 |
| | 27 | | 8 | | 27 |
| Expenses: | | | | | |
| $240.47 | | | | $240.47 | |

### E. January, 1974–July, 1974

The five–day trial (hearing) in May consumed the primary expenditure of time and money during this era. The plaintiffs sought in earnest one of the three merger options; alternatively, they asked that new plans for both city and county be implemented. The Order of this Court is published at 379 F.Supp. 1352. It was found that the racial disparity resulted from de facto segregation, and not from any purpose to thwart desegregation on the part of county or city. The City Board was directed to submit its attendance plan within ten days of the July 30 Order. The Court concludes that plaintiffs' attorneys should recover 60 per cent of their claimed expenses[3] and hours.

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 95 | JLC | 20.3 | JLC | 57 |
| COP | 18 | | | COP | 10.8 |
| WAM | 18 | | — | WAM | 10.8 |
| | 131 | | 20.3 | | 78.6 |
| Expenses: | | | | | |
| $875.31 | | | | $501.31 | |

### F. August, 1974–July, 1975

During this year, the efforts directed toward the appeal of parts of the Order of this Court dated July 30, 1974, and the continuing effort in this Court to have a new plan adopted for the city schools are inextricably bound. Plaintiffs did not appeal the part of the July 30 Order that denied inter–district relief. The Court of Appeals reversed the July 30 Order in part, but shortly before the Court of Appeals decision was issued, this Court issued another Order dated July 17, 1975, that substantially agreed with the imminent Fourth Circuit opinion. The city schools were ordered effectively to desegregate and not to maintain *any* racially identifiable schools. The Court concludes that plaintiffs' attorneys should recover 90 percent of their claimed expenses and hours.

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 65 | JLC | 50.6 | JLC | 58.5 |
| WAM | 16 | | | WAM | 14.4 |
| COP | 4 | | — | COP | 3.6 |
| | 85 | | 50.6 | | 76.5 |
| Expenses: | | | | | |
| $902.96 | | | | $812.66 | |

### G. August 1975–Present

Most of this time has been spent in the attempt to recover fees and expenses. Some of the time was spent in conferring with Durham officials for the adoption of a new plan by the City Board. By Order dated March 1, 1977, this Court ruled that July 1, 1972, was the date from which attorneys' fees and costs could be recovered from the City Board. The Court of Appeals affirmed that Order in part, with the exception that time spent in preparation for the Motion for Further Relief filed in July, 1972, was recoverable, and that *expenses* from that time were recoverable as well, the first clear holding in this circuit regarding expenses as part of a fee award. The Court concludes that plaintiffs' attorneys should recover 70 per cent of their claimed expenses and hours.[4]

| Plaintiffs Claim | | Defendant Contends | | Court Concludes | |
|---|---|---|---|---|---|
| Hours: | | | | | |
| JLC | 81.75 | 19 total hours for | | JLC | 57.2 |
| WAM | 19 | JLC and JW | | WAM | 13.3 |
| JW | 147 | | — | JW | 102.9 |
| | 247.75 | 19 | | | 173.4 |
| Expenses: | | | | | |
| $1,086.70 | | | | $760.69 | |

---

3. The amount of $39.79 for additional secretarial assistance has been subtracted from the claimed expenses before calculating the percentage. Plaintiffs did not seek recovery of $2,201.41 for consultant expenses incurred during this time.

4. Plaintiffs claim 10 hours for James M. Nabrit during this period. Mr. Nabrit, a very able attorney, was not active in the litigation during the period for which plaintiffs may be awarded fees. The ten hours claimed are for the preparation of a statement of his time spent in the pre–award era. The Court declines to award fees for time spent in calculating time spent for which no award may be made.

## APPENDIX II

### ANALYSIS OF COSTS

Plaintiffs were awarded costs against the County Board by Order of the Court of Appeals dated December 2, 1969, reported at 418 F.2d 1040 *sub nom. Nesbit v. Statesville City Bd. of Educ.* That award of costs has been the only such award heretofore made in any of the consolidated cases. By Order of this Court dated March 1, 1977, as between the plaintiffs and the County Board, each side is to bear its respective costs incurred since 1972. Because the case against the County Board was inactive from 1969 to 1972, there are no costs to be taxed against the County Board.

Plaintiffs are entitled to be awarded costs against the City Board from the inception of the litigation in 1960 under the provisions of 28 U.S.C. §§ 1920–1921. The Court has reviewed the itemized list of costs filed by plaintiffs on December 16, 1976, and updated on March 22, 1979. It is apparent that some of the costs were incurred against the County Board. (As stated in the accompanying Memorandum Opinion, after the consolidation order plaintiffs justifiably considered the cases to be an indivisible whole.) In particular, the Court has disallowed 50 percent of the amount claimed for deposition transcripts in November, 1972; 30 per cent of the amount claimed for deposition transcripts in July, 1973; and 30 per cent of the amount claimed for the trial transcript in November, 1974. Costs are awarded in the sum of $4,051.81.