**Margaret Toomer BLAKE, et al., Plaintiffs,**

v.

**Samuel M. HOSTON, et al., Defendants.**

**Civ. A. No. 76–0479.**

United States District Court, District of Columbia.

April 9, 1981.

Glenn H. Carlson, Perito, Duerk, Carlson & Pinco, Washington, D.C., for plaintiffs.

Stephen S. Cowen, Asst. U.S. Atty., District of Columbia, for defendants.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

At the time this suit was filed plaintiffs were female nursing assistants employed by the National Institute of Health (NIH). As a result of this suit and various stipulated settlements, the plaintiffs prevailed in their claim for promotion, their claims for back pay at the GS–4 to GS–5 level and their request for a change in the policies of the NIH. Two plaintiffs also prevailed in their claim for back pay at the GS–3 to GS–4 level. The court has no doubt, and the government does not seriously contest, that for purposes of awarding attorney fees under Title VII, 42 U.S.C. § 2000e–5(k), the plaintiffs prevailed in their suit. The government argues that since the plaintiffs only prevailed in part, and as a result of a stipulation between the parties the plaintiffs' attorney has already received attorney fees to cover that successful part of their suit, the court should not award any additional attorney fees. The plaintiffs respond that, as the prevailing party, they are entitled to attorney fees for their time spent on unsuccessful litigation of the prejudgment interest and inflation issue.

Thus, the issue now before the court is whether plaintiffs, who have already received $13,250 in attorney fees from the government, should receive an additional $22,973 in attorney fees to cover litigation of the plaintiffs' claim to prejudgment interest and/or a supplement due to inflation. The Title VII statute provides that the award of attorney fees to the prevailing party is within the court's discretion. 42 U.S.C. § 2000e–5(k) (1970). As the court stated above, there is little question that plaintiffs prevailed in this suit. All that remains is for this court to exercise its discretion with respect to the narrow issue of compensation for litigation of the single interest/inflation issue.

The government cites the language in the Court of Appeals recent *en banc* decision in *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir. 1980) to the effect that "no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail." At 892. The government would have this court rule that the interest/inflation issue was a separate claim from the discrimination claims in which plaintiffs prevailed. But as plaintiffs' counsel correctly points out, such a view would be a misreading of *Copeland.* Immediately after the language quoted above, the *Copeland* court inserted the following footnote:

> [Citations omitted.] However, it sometimes will be the case that a lawsuit will seek recovery under a variety of legal theories complaining of essentially the same injury. A district judge must take care not to reduce a fee award arbitrarily simply because a plaintiff did not prevail under one or more of these legal theories. No reduction in fee is appropriate where the issue was all part and parcel of one matter, *Lamphere v. Brown Univ.,* 610 F.2d 46, 47 (1st Cir. 1979), but only when the claims asserted "are truly fractionable." *Id.* [at 892 n.18].

Reference to the *Lamphere* case cited above reveals the following passage:

> [I]t was not error to award fees for the time spent by counsel in an unsuccessful

attempt to broaden the scope of remedies available under the decree. This issue was all part and parcel of one matter—counsel should not be penalized for every lost motion. This is not the same as a case where claims are truly fractionable. [610 F.2d 46, 47 (1st Cir. 1979).]

The lesson to be derived from *Copeland*, and secondarily from *Lamphere*, is twofold: time spent on claims which are separate, "fractionable" and unsuccessful should not be compensated; time spent on an issue which is part and parcel of a successful claim should be compensated. As in *Lamphere*, the plaintiffs' counsel here seeks compensation for "time spent ... in an unsuccessful attempt to broaden the scope of remedies...." *Id.* Seeking interest or an inflation adjustment is clearly an attempt to expand the remedy in this case. But before setting an attorney fee award there is one aspect the court finds troubling.

In *Copeland* the Court of Appeals concluded that, in general, an upward adjustment in attorney fees may be appropriate "to compensate for the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained." *Supra*, at 893. Such an adjustment encourages attorneys to represent Title VII plaintiffs with less than "sure-thing" claims and is therefore in the public interest. The present case is the converse of the contingency adjustment discussed in *Copeland*.

While the government concedes that the interest/inflation issue pressed so vigorously by plaintiffs is not frivolous, the government would have the court find that at the time plaintiff pressed this claim success was "highly improbable." Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorneys' Fees at 10.

The court does not want to appear to be penalizing litigants who appeal its rulings, nor does it wish to disparage the likelihood of success of such appeals. But in this case the defendants' arguments appear to have considerable merit. Two circuit courts had already ruled adversely to plaintiff's interest/inflation argument, and although it was an issue of first impression in this Circuit, there was enough related case law from the Supreme Court to lead even the most optimistic observer to pessimism.[1]

Having already achieved their "prevailing party" status, plaintiffs filed two successive, identical and unsuccessful motions to have this court adjust their award to include prejudgment interest and/or an adjustment for inflation. Plaintiffs filed no fewer than six briefs on this issue before this court alone. Plaintiffs then lodged an unsuccessful appeal on this question before the Court of Appeals. *Blake v. Califano*, 626 F.2d 891 (D.C.Cir.1980). The courts should not interpret the attorney fees provision of Title VII so as to encourage counsel who have already qualified for compensation to litigate at the defendants' expense every faint glimmer of succor. The court believes that in those rare cases where the plaintiffs have already qualified for attorney fees under Title VII and continue to press highly improbable issues that are part and parcel of their successful claim, the court, in its discretion, may choose to reduce counsel fees by a "noncontingency" factor.[2] The court wishes to emphasize in the strongest terms that application of this "noncontingency" factor should be the exception and not the rule. As another court noted in 1978, "absent a showing of frivolity or bad faith a court engaged in measuring the fairness of fees sanctioned by the statute should not judge the strategic wis-

---

1. The court has no reason to doubt the competence or sincerity of plaintiffs' battle to receive an interest/inflation adjustment. But in light of the improbability of success, plaintiffs may have been wise to have resisted the urge to brief and rebrief and then argue and reargue this issue before the court.

2. The court disagrees with defendants' view that attorney fees for the plaintiffs' unsuccess-

ful attempt at expanding the remedy must necessarily correlate favorably with those fees earned in gaining the initial finding of liability. It may well be that a defendant might concede liability and contest the remedy such that a plaintiff's attorney's major contribution to such a suit would be necessarily in the area of defining the scope of the remedy.

dom of every litigational tactic used or employ omniscient hindsight to expand or contract an award by a standard 'requir[ing] attorneys (often working in new or changing areas of the law) to divine the exact parameters of the courts' willingness to grant relief.'" *Richardson v. Civil Service Commission of State of New York*, 449 F.Supp. 10, 11–12 (S.D.N.Y.) (Tenney, D.J.), *quoting Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977), *rev'd*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

Title VII attorneys serve an important role in enforcing that statute, and it is imperative that the counsel fees provision not be interpreted so as to discourage enterprising counsel from pressing their client's claims to the limits of our evolving law. The private attorney general scheme, a unique amalgam of public interest and self-interest, is crucial to the success of much of our most important law. But the private attorney general must be subject to an occasional check or it will be its own undoing.

Turning now to the calculation of appropriate attorney fees, the court has concluded that none of the time plaintiffs' attorneys spent between the court's first, April 1, 1977 order denying their motion for interest/inflation adjustments and the court's second September 1, 1978, order denying an identical motion should be compensated. The court finds that 70% of the remaining hours were reasonably expended on the issue before the court. The court also finds that the rate requested by plaintiffs, ranging from $40 for associates in 1976 to $75 for partners in 1978, is reasonable. Based on the professional quality of the written work submitted to the court, there is no reason to reduce the fee award for any shortcomings in this regard. Finally, the court will reduce the "lodestar" figure, arrived at by multiplying the hours noted above by the hourly rates requested by plaintiffs' attorneys, by 20% to account for the noncontingency factor discussed earlier. The court therefore

ORDERS that the plaintiffs be awarded attorneys fees in the amount of nine thousand, four hundred and thirty-eight dollars ($9,438.00) to be paid by the United States of America to counsel of record of the plaintiffs.