**Thomas J. STRAMA, Plaintiff,**

v.

**Paul Q. PETERSON, M.D., et al., Defendants.**

No. 78 C 2144.

United States District Court, N. D. Illinois, E. D.

Jan. 6, 1982.

Stephen G. Seliger, Chicago, Ill., for plaintiff.

Joseph M. Gagliardo, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Thomas J. Strama ("Strama") originally sued former Director of Illinois Department of Public Health ("IDPH") Paul Peterson; Coordinator of IDPH's Mobile Intensive Care Program ("MICP") Karen Swanson; Chief of MICP at Billings Hospital Frank Baker; and former City of Chicago Fire Commissioner Richard Albrecht ("Albrecht") because of their involvement in the allegedly unlawful suspension of Strama's paramedic license and his consequent loss of employment. Strama and Albrecht were able to reach a settlement under which Strama was reinstated as a Fire Department paramedic with full back pay. As a "prevailing party" Strama now seeks attorneys' fees and expenses from Albrecht under 42 U.S.C. § 1988 ("Section 1988"). For the reasons stated in this memorandum opinion and order Albrecht is ordered to pay Strama $45,551.56 in fees and expenses.[1]

[1.] This opinion also deals with the possibility that Albrecht may later become entitled to contribution from one or more of the other defendants. That prospect does not affect Strama's right to current recovery from Albrecht.

### "Lodestar" and the Multiplier

As is so often the case under Section 1988, the real question is not whether but how much in fees should be awarded. Albrecht cannot seriously contest Strama's right, at a *minimum,* to recover the "lodestar" figure [2] of attorneys' fees generated by the suit against Albrecht. Strama's counsel provided high quality legal work that resulted (by settlement) in complete vindication of Strama's rights.

Fees are clearly awardable under the standards approved in *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir. 1981). This action triggered the settlement. There is no evidence that any time spent was wasted or unnecessary. Nor was Strama's complaint frivolous: It withstood motions of various defendants (three by Albrecht himself) for dismissal and summary judgment, and Strama has obtained reinstatement and full backpay with the litigation not yet over. *Cf. Bonner v. Coughlin,* 657 F.2d 931, 934 (7th Cir. 1981) (plaintiff recovered only nominal damages, yet was entitled to a reasonable fee award).

Strama poses a more difficult question by his request for a multiplier of 1.5. Cases seldom discuss the appropriateness of a multiplier and the standards for its determination. In *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598, 604 (7th Cir. 1979), *cert. denied,* —— U.S. ——, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981), our Court of Appeals approved the use of a 1.25 multiplier. Although *Kamberos* was a Title VII case, the same court has implicitly approved the use of multipliers and the *Kamberos* standards in Section 1983 cases. *Bonner v. Coughlin,* 657 F.2d 931, 936–37 (7th Cir. 1981).

As a starting point *Kamberos* looked to Code of Professional Responsibility DR 2–106:

Factors to be considered as guides in determining the reasonableness of a fee include the following:

[2.] It has become customary so to describe hours spent multiplied by reasonable hourly rates.

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

This Court will follow that lead.

As to the first factor, the action has already generated a great deal of constructive time and effort by Strama's counsel. But the Court does not perceive it as involving unusually complex or novel legal issues. Even though the parties often treat it in these terms, the case is *not* about whether a paramedic can be fired for performing an episiotomy. It rather poses the question whether the procedures followed in terminating Strama comported with due process. Though due process questions are rarely simple, the case law on public employees' due process rights is well-developed.

Factor (1) then would not support use of a multiplier. Strama's counsel has also not borne out his contention that the case precluded Strama's counsel from accepting other employment (factor (2)). As Albrecht points out, Strama's counsel spent the equivalent of about three weeks per year on this action.

■ But several factors weigh strongly in favor of a multiplier. On balance they support a substantial premium over the lodestar figure.

First of course is the major victory won by Strama's counsel even at this interim stage (part of factor (4)). And over and above backpay, reemployment involves a benefit that may well exceed a one-shot recovery of damages. As for factor (6), settlement was reached only after three years of litigation, and Strama was represented most capably.

Various matters relating to lead counsel Stephen Seliger point in the same direction. Seliger is a highly qualified [3] and experienced lawyer who has spent much of his time doing civil rights litigation. For the last three years he has been in practice for himself specializing in employment civil rights and discrimination litigation. That practice necessarily involves a substantial dependency on fee awards in successful cases.

Indeed this action exemplifies problems incurred in discrimination litigation. Strama was unable to bear his own legal costs, so Seliger took the case on a contingency fee basis. Two law firms had refused to represent Strama on such terms. All these facts provide major support for a significant multiplier. *In re Cenco, Inc. Securities Litigation*, 519 F.Supp. 322, 327 (N.D.Ill. 1981).

Seliger requests a lodestar rate of $80 per hour. That figure is modest indeed. Even *without* application of a multiplier, the Court's own experience is that his contemporaries with comparable credentials command hourly rates in the $100–135 range.

Were *all* the factors on the plus side, a multiplier of 2 to 3 would be entirely appropriate. But weighing the various elements in the total mix, this Court finds a $125 hourly rate for Seliger (just over a 1.5 multiplier) is a reasonable fee. No multiplier will be applied to the other lawyers' time. Neither Ms. Weiner nor Mr. Johnson spent a great deal of time on the case; both are less experienced than Seliger; and there is no showing that the other plus factors should be applied to their time.

**3.** Seliger was a 1969 cum laude graduate of Northwestern Law School, where he was co-editor-in-chief of the *Journal of Criminal Law, Criminology and Police Science.* Before entering the law practice he clerked for Judges Kerner and Fairchild of our Court of Appeals.

### Excludable Time?

Albrecht contends that certain time charged by Strama's counsel should be excluded on two grounds:

(1) Strama originally sued the City of Chicago and Michael Bilandic, both of whom were dismissed early in the litigation.

(2) Much of the time recorded by Seliger does not specify whether it was spent pursuing Strama's claim against all defendants or Albrecht alone.

That argument is without merit.

In *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir. 1981) the plaintiff had prevailed on an age discrimination claim but failed to prove the violation wilful. For that reason the district court had reduced plaintiff's fee recovery. In rejecting that result the Court of Appeals contrasted the case with *Busche v. Burkee*, 649 F.2d 509 (7th Cir. 1981), saying:

> Plaintiff Syvock has presented one claim of age discrimination. He has 'essentially succeeded.' His failure to persuade the court that he mitigated his damages or that the defendant acted wilfully indeed decreased his damage award. Syvock's failure to prevail on these elements of his claim, however, did not alter the finding of liability against the defendant. Busche, on the other hand, contended that his due process rights were violated by three different actions by defendant at the time of his termination. The two on which he failed to prevail were not mere *aspects* of a larger claim that affected the amount of damages he was due for the claim on which he did succeed. They were independent claims. . . .

Strama too had one claim: He was unlawfully terminated. Before discovery it was impossible for Strama to determine who was responsible, so he had to sue all possible defendants. Defendants have at times enmeshed Strama in a Catch-22: He could not be rehired because he was de-certified, and he was de-certified because he was fired. Because Strama has carefully excluded time spent *exclusively* on his claims against other defendants, this Court will permit recovery for all requested time.[4]

### Other Defendants' Participation

■ Strama may hereafter succeed in imposing liability on one or more other defendants. If so Section 1988 will come into play again, and time spent to date will of course be relevant to the fee award against them.

But that fact does not mitigate Albrecht's current liability for fees. By settling Albrecht avoids liability for all fees incurred *after* the settlement. But at this time Albrecht has nothing more than a *potential* right to have other defendants share the *pre-settlement* burden.

As to Albrecht Strama is already a prevailing party entitled to all fees incurred in bringing an action based on his termination. It would be unfair to require Strama to abide the result of possible recovery against other defendants down the road.[5] Albrecht must pay the entire amount now and pursue his right to contribution if and when other defendants are found liable.

### Paralegal Fees; Expenses

Albrecht argues that paralegal time should not be part of a proper Section 1988

---

4. Strama might be argued to have separate claims for unlawful termination and for unlawful de-certification. But those issues are so entwined that virtually every substantive aspect of this case raises both. This Court cannot fairly impose on Strama's counsel the impossible task of determining what time was spent on termination and what time on de-certification. Such an artificial division is uncalled for. In fact Strama's exclusion of time he viewed as spent exclusively on the other defendants has given Albrecht more than his

due, given the unitary nature of Strama's claim.

5. Although not obligated to do so, Seliger offered to permit Albrecht to pay one-third of the requested fees, staying further briefing of the fee issue until resolution of the case against the other defendants. That proposal, which would afford Albrecht rather than Strama or Seliger the value of the use of money in the interim, was never responded to—though it gave Albrecht substantially more than he was entitled to.

award. This Court disagrees. If a law firm chooses to bill for paralegal services on a time basis rather than viewing them as overhead charges and calculating higher hourly rates for lawyers, that economic decision generates an equally appropriate award figure. Several courts have honored such requests without even discussing the issue. *In re Cenco, Inc. Securities Litigation*, 519 F.Supp. 322, 326–27 (N.D.Ill.1981); *Veterans Education Project v. Secretary of Air Force*, 515 F.Supp. 993, 996 n.4 (D.D.C. 1981); *Lamphere v. Brown University*, 610 F.2d 46, 48 (1st Cir. 1979); *Eubanks v. Pickens-Bond Construction Co.*, 24 FEP Cases 892, 896 (E.D.Ark.1979), *aff'd*, 635 F.2d 1341 (8th Cir. 1980).

■ Any other approach would either make no economic difference or skew the awards for no good reason (in fact, Albrecht's position could be counterproductive by creating an incentive for lawyers to do work themselves that paralegals can perform at a much lower rate). Seliger's $25 per hour request for paralegal time is eminently reasonable, consistent with the market and allowable.

■ Finally Albrecht challenges the inclusion of expenses incurred in traveling to a deposition. Seliger went to Springfield, Illinois to attend the deposition of Karen Swanson, a co-defendant and central figure in this action. That requested expense is entirely reasonable and proper.

### Conclusion

Strama's motion is granted in the following amount, which Albrecht is ordered to pay to Strama:

| | |
|---|---|
| Seliger: 300.75 hours × $125 | $37,593.75 |
| Johnson: 60 hours × $50 | 3,000.00 |
| Weiner: 23.5 hours × $75 | 1,762.50 |
| Johnson (student) 25 hours × $25 | 625.00 |
| Sieler (paralegal) 25 hours × $25 | 625.00 |
| Expenses | 1,945.31 |
| Total | $45,551.56 |

This order disposes of the last matter in controversy between Strama and Albrecht.

■ This Court is continuously mindful of the admonitions of our Court of Appeals in cases such as *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir. 1980) that Fed.R.Civ.P. ("Rule") 54(b) determinations "are not to be made routinely or as an accommodation to counsel." But the situation here satisfies all the considerations that should make the current order against Albrecht appealable though the litigation itself still pends against other defendants. Albrecht is no longer a party, and the enforceability (and appealability) of the order as a final judgment will not derogate from the progress of Strama's substantive claims against the other defendants. This order poses discrete issues wholly separate from those involved in the substantive claims.[6] And there is no reason this order should remain subject to review and reconsideration by this Court, rather than permitting Strama to execute on it as a final judgment. Accordingly, as contemplated by Rule 54(b) this Court determines expressly that there is no just reason for delay and expressly directs the entry of final judgment in favor of Strama and against Albrecht in the sum of $45,551.56.[7]

---

6. To the extent if any that like issues may be presented as between Strama and other defendants if Strama ultimately prevails against them on trial, a definitive decision by the Court of Appeals if this order is appealed will of course control.

7. One final comment should be made about the end result here. Lawsuits are for litigants not lawyers. "Appearance of impropriety" (Code of Professional Responsibility, Canon 9; Code of Judicial Conduct for United States Judges, Canon 2) is always a cause for concern where a fee award bulks large in relation to the ultimate benefit to the client. Here any such surface comparison (some $44,000 in fees to the lawyers as against $22,000 in back pay to the client) is deceptive and should not change the conclusions reached:

(1) As already stated, reemployment is the most significant aspect of the relief obtained for Strama. Its economic worth substantially

outstrips the cash backpay, and had the case not been settled the backpay claim would have continued to mount.

(2) Backpay of course was calculated by taking into account Strama's other employment in the interim. In gross, the lost wage claim was about three times the ultimate backpay award after giving effect to mitigation.

(3) Albrecht himself was one of the principal forces in multiplying the legal efforts expended by counsel. But for the several (consistently unsuccessful) legal attacks on Strama's claim, the fee request would have been far more modest.