Andrew S. JACOBS, et al.,
Plaintiffs, Appellants,

v.

Anthony MANCUSO, etc., et al.,
Defendants, Appellees.

No. 86–1817.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1987.

Decided July 24, 1987.

John M. Roney with whom Roney & La-
binger, Providence, R.I., was on brief for
plaintiffs, appellants.

Alison L. Holm, Asst. City Sol., City of
Providence, Providence, R.I., for defend-
ants, appellees.

Before CAMPBELL, Chief Judge,
ALDRICH and SELYA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an appeal in a Section 1983 civil rights class action on behalf of plaintiffs' counsel, whose sought lodestar figure was reduced by the court by some sixty percent. Counsel has been criticized by defendants for charging high rates for unimportant work, and at the same time for charging time for paralegals to become acquainted with the files. It is even claimed that for counsel to recover more than what paralegals "were actually paid ... would constitute a windfall to the law firm," defendants apparently having never heard of Social Security taxes falling on employers, let alone per capita office overhead. Possibly defendants' all-points attack on plaintiffs' counsel subconsciously affected the court. Obviously, some attorneys make extraordinarily excessive overcharges,[1] but still there should be some burden on the court to explain why it makes a substantial adjustment, up or down, of a diary-supported bill. *See, e.g., Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984); *Sargeant v. Sharp,* 579 F.2d 645, 647 (1st Cir.1978); *see also Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 87 (1st Cir. 1984). This is not to say that the lodestar total is presumptively correct; a court may readily make substantial reductions, particularly if based on personal observation, but fairness to counsel, and necessary preservation of a right of review, call for findings. Whether they were sufficient and proper here requires a review.

On May 6, 1982, plaintiffs Andrew S. Jacobs and Caroline M. Jacobs, primarily through attorney Alden C. Harrington, filed a complaint in the district court against the police chief of the City of Providence, Rhode Island, unnamed city police officers, and the City itself. The initial action was based upon defendants' alleged illegal seizure of the Jacobs' Volkswagen, without warrant, or notice, or opportunity to be heard, because of their claimed failure to pay six parking tickets. Allegedly, defendants towed the car from the Jacobs' private property. Plaintiffs' request for damages ($10,000 compensatory, and $50,-000 punitive) indicated exceptional overzealousness, the more particularly so in that defendants were holding the Volkswagen simply to secure a claim of less than $100. Plaintiffs also sought a temporary injunction, demanding return.

Shortly thereafter attorney John M. Roney, representing another owner and bailee whose car had been seized by the City, became lead counsel.[2] On May 13, Roney filed an amended complaint that added his own two clients as plaintiffs, seeking $16,000 each in damages, reformed the suit to a class action brought on behalf of all similarly situated persons, and set forth additional bases for recovery under the fourth amendment and Rhode Island state law. As further amended, the complaint sought damages of $500,000 on behalf of the class. Roney also filed a memorandum of law and motions for temporary injunction on behalf of the class as well as his individual clients. Defendants, shortly, voluntarily returned the individual plaintiffs' cars and announced that they were abandoning the towing policy.

Plaintiffs' requests for injunctive relief were mooted, but they continued to press

---

1. *E.g., Furtado v. Bishop,* 84 F.R.D. 671, 674 (D.Mass.1979), *modified,* 635 F.2d 915 (1st Cir. 1980) (trial counsel and associate who had taken no active part in the trial sought to be paid for ten hours ($1,000 each) waiting in the courthouse for jury deliberations although the court had said they could be on telephone notice, and with no conceivable need for second counsel in any event). In *Ricci v. Key Bancshares of Maine, Inc.,* 111 F.R.D. 369, 378–80 (D.Me.1986), seven Boston lawyers, representing two affiliated corporations whose interests were the same, came to Portland for a hearing to charge plaintiffs with sanctions, in which, on the first day, five took no part and the sixth only a minor part, with five remaining for a short

argument on the second day, in which four did not participate. *See also Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984).

2. Attorney Harrington, who was not affiliated with Roney other than in connection with this case, had relatively little connection with the proceeding from this point forward. He remained co-counsel and continued to provide advice and other limited assistance at later stages, eventually recording some 31 hours in total for his work. His claim for fees was settled by negotiation with defendants, leaving only Roney's claim for resolution by the court.

for damages. In light of defendants' present position—seemingly adopted by the court—that plaintiffs' counsel engaged in make-work activities, we note that plaintiffs' task was made more difficult by defendants' refractory approach to civil procedure obligations. Despite the specific requirements of Fed.R.Civ.P. 8(b), the answer to plaintiffs' second amended complaint consisted almost exclusively of general denials, thus increasing the likely scope and expense of discovery. Counsel was further set back by defendants' recalcitrance in responding to discovery requests, for which the court eventually imposed a $500 sanction. Finally, when plaintiffs' counsel sought to locate the approximately 800 members of the affected class, he discovered that the city's towing records had been destroyed, enormously increasing the difficulty of identifying the victims of defendants' towing policies.

Eventually the parties entered into negotiations and concluded a settlement on the following terms:

> [D]efendants agree that they will pay to the plaintiffs and to each and every class member who responds with a timely and properly executed proof-of-claim and release an amount totalling the amount paid by the class member or his agent to a towing company for towing and storage of his or her motor vehicle plus $15.00, up to a total of $50.00; provided, however, that in no event shall the defendants be required to pay to any claimant an amount in excess of $50 for any one seizure.

Defendants also agreed to pay for various class notification expenses as well as "such attorneys' fees and costs as shall be determined fair and reasonable by the District Court." Some 110 class members eventually filed for compensation, of which 21 were, at least initially, rejected. The city paid out some $4,000 on the remaining 89 claims.

Following execution of the settlement agreement, the parties turned to the issue of attorneys' fees. Plaintiffs' lead counsel, Roney, was unable to reach agreement with defendants and eventually submitted his request to the court; he later supplemented this filing by requesting further compensation for time spent on the fee question itself. Roney's fee request was accompanied by affidavits and detailed contemporaneous time sheets. *Cf. Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558 (1st Cir.1986). A summary of the request is set forth as Appendix A.

■ In a fifteen-page opinion the court made reductions in the following categories: hourly rates for counsel, hourly rates for paralegals, billable hours, and elimination of a multiplier. A summary of the court's analysis is set forth as Appendix B. Plaintiffs do not complain of the lower hourly rates,[3] and we see no error in the refusal of a multiplier. From the standpoint of contingency, liability here was so plain, as the court pointed out, that, as a practical matter, the risk of not recovering a fee was all but eliminated. *Cf. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). We are much troubled, however, by the arbitrariness of the reduction in billable hours.

■ Roney sought payment for 155.5 hours on the merits, exclusive of paralegal and law clerk time, and exclusive of work on fees. Rather than identifying particular activities or practices that were inefficient, duplicative, irrelevant, or otherwise inappropriate for billing purposes, *cf., e.g., Hart v. Bourque*, 798 F.2d 519, 522–23 (1st Cir.1986); *Grendel's Den*, 749 F.2d at 952–55; *Ricci*, 111 F.R.D. at 378–81, the court offered unsupported assertions that 125 hours, to include time spent on fee determination, was "adequate time to accomplish the task particularly in light of [the time]

---

**3.** Within reason, the court may establish, as did the court in this case, multiple hourly rates to reflect differences in the types of services performed for the client. *See Boston & Maine Corp. v. Moore*, 776 F.2d 2, 9 (1st Cir.1985); *Miles v. Sampson*, 675 F.2d 5, 9 (1st Cir.1982); *see also Pennsylvania v. Delaware Valley Citizens' Council*, —— U.S. ——, 106 S.Ct. 3088, 3099, 92 L.Ed.2d 439 (1986) (tacitly endorsing the use of three different rates, ranging from $100/hr. ("most difficult") to $25/hr. ("requir[ing] little or no legal ability")).

allowed for paralegals" and that, in addition, 25 of the 31 hours recorded by co-counsel Harrington, *see* note 2, ante, should be deducted from lead counsel Roney's award because "there must be some overlap when co-counsel are involved."[4] The court's only specific examples of excessive billings applied to the fees portion of the litigation. Moreover, its principal concerns here were that plaintiffs chose to respond "tit-for-tat" to defendants' arguments on fees, and that counsel "filed a 16 page memorandum arguing entitlement to counsel fees even though one of the terms of the settlement was that he was to receive a reasonable fee." As to the first, to the extent that defendants raised unpersuasive arguments in opposing fees, which they clearly did, they have only themselves to blame for prompting a response from plaintiffs. " 'The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.' " *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 2697 n. 11, 91 L.Ed.2d 466 (1986) (plurality opinion) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C.Cir.1980) (en banc)). As to the second concern, the memorandum referred to by the court discusses entitlement to fees only in the first two sentences, thereafter reviewing the facts and law supporting plaintiffs' arguments for approval of particular hours, rates, and a multiplier.

We will return to considering the time spent on establishing the fee recovery later. With respect to fees for time spent on the merits, the court's allowing a total of 95 hours for Roney and Harrington combined, and then attributing 25 hours to Harrington, reduced Roney's 155.5 documented hours to 70. Manifestly, by the end of the case, Roney had done by far the lion's share of the work, having introduced the class action, carried it forward against

vigorous opposition, settled the case, and arranged for distribution.

We have never required that courts set forth hour-by-hour analyses of fee requests. Such an approach would be unduly burdensome and would leave the judge "so deluged with details that he is unable to view the claims for fees in perspective." *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir.1983); *see also Moore*, 776 F.2d at 10. At the same time, however, we have emphasized that effective judicial review is impossible unless the court "provide[s] a 'clear explanation of its reasons for the fee award.' " *Grendel's Den*, 749 F.2d at 950 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). While sympathetic to the task faced by the court in this case, given the enormous reduction for which the record affords no explanation, we cannot affirm its award.

We have decided, however, not to remand for further review, much as we dislike the task that has been put upon us. "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. To require an additional proceeding in the district court, and perhaps another review here, would further increase the already substantial cost that the parties and the courts have incurred on what should be a peripheral issue. Having the benefit of the district court's opinion, and with this case having been settled before trial, we are disadvantaged relatively little by the absence of further review by the district court.[5] Accordingly, having reviewed the record, as well as the briefs filed both here and in the district court, we shall set forth our findings on the remaining issues. *See, e.g., Rogers v. Okin*, 821 F.2d 22, 31 (1st Cir.1987); *Hart v. Bourque*, 798 F.2d at 523; *Grendel's Den*, 749 F.2d at 951.

---

4. We question the court's presumption of duplication. In any event, it would not seem logical to charge a greater number of duplicative hours against Roney than were charged against Harrington.

5. Indeed, if we accepted appellant's suggestion that the case be assigned to a different judge upon remand, *see Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 561 (1st Cir.1986), any further benefit from the court's previous observations in the case would be lost entirely.

██ In general, we have found plaintiffs' acceptable charges on the merits to be greater than recognized by the court. For the most part, time was recorded in appropriately small increments, in amounts seemingly reasonably expended for the tasks identified, with extensive use of supervised paralegals and law clerks for tasks to which they were suited, in particular those associated with notifying class members and otherwise administering the details of the class action. Many of the challenges to plaintiffs' billings are entirely without merit. For example, defendants argue that the court should deny all billings in the following categories: (1) paralegal services above actual wages, and review of files by paralegals; (2) preparation and argument for successful sanctions against defendants, defendants thereby seeking to diminish the penalty; (3) telephone conversations with outside attorneys (one hour!); and (4) deposition of a defendant whom plaintiffs thereupon dismissed from the suit. As to this last, a deponent need not be a party in order to provide useful information. As to the first point, on paralegals, in *Lamphere v. Brown University*, 610 F.2d 46, 48 n. 3 (1st Cir. 1979), we declined to lay down a final rule on this subject, which has occasioned considerable diversity,[6] and we still will not. We do, however, reject defendants' approach, and also the view that, like the administrative staff, paralegals and law clerks should be considered part of the overhead included in counsel's fee. Rather, the use of such personnel is to be encouraged by separate compensation in order to reduce the time of more expensive counsel. *See, e.g., Spanish Action Committee v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir.1987).

██ The 51–hour assessment for recovering fees, however, clearly should be reduced. Counsel solicited and prepared five separate affidavits from area counsel concerning the reasonableness of plaintiffs' charges, when no more than two, barring unusual circumstances, would seem sufficient. An inordinate number of attorney hours were claimed for reviewing and analyzing time records and preparing associated affidavits and memoranda, in view of the largely clerical skills needed for reviewing these records and the relatively uncomplicated law applicable to their analysis. Finally, we do not believe that defendants should pay for whatever research, writing, and argument plaintiffs have devoted to seeking a contingency multiplier. Whether or not the claim was actually frivolous, it was, in any event, unsuccessful, and plaintiffs ought to bear the fees and expenses incurred in its pursuit. *See Grendel's Den*, 749 F.2d at 958. A precise determination of the hours expended in these activities is not practical, but neither is such precision required. We find acceptable on the record the 30 hours awarded, at the court-determined rate of $60/hour.

██ After examining particular aspects of plaintiffs' billing in detail, we have stepped back for a moment to "retain a sense of overall proportion," *Gabriele*, 712 F.2d at 1507. We understand why the court was troubled when it viewed plaintiffs' request for over $26,000 in fees and costs in the context of a case that was settled before trial on terms requiring defendants to pay out only about $4,000 in damages. We note, however, that the proportion of damages to fees has limited rele-

---

**6.** A review of recent opinions indicates that paralegal and law clerk expenses are most frequently reimbursed based on an hourly fee. *See, e.g., Spanish Action Committee v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir.1987); *Richardson v. Byrd*, 709 F.2d 1016, 1023 (5th Cir.1983), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710; *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 30 (E.D.Pa.1985); *Zacharias v. Shell Oil Co.*, 627 F.Supp. 31, 34–35 (E.D.N.Y. 1984); *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 589 & n. 6, 591 (D.R.I.1983); *see also Ramos v. Lamm*, 713 F.2d 546, 558 (10th Cir.1983) (acknowledging "the increasingly widespread custom of separately billing for" paralegal and law clerk services). *But see, e.g., Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862; *NAACP v. Detroit Police Officers Association*, 620 F.Supp. 1173, 1194–95 (E.D.Mich.1985); *Roe v. City of Chicago*, 586 F.Supp. 513, 516 (N.D.Ill.1984); *cf. Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 & n. 1 (5th Cir.1980) (collecting cases).

vance to our determination.[7] Although the case did not go to trial, it did involve significant motions and pleadings, strongly resisted discovery, a difficult battle over class certification, and an extensive effort to identify and obtain recovery for members of the affected class. Moreover, plaintiffs were somewhat more successful than the $4,000 figure suggests. The onset of litigation—although admittedly at an early stage of counsel's efforts—likely forced the city to abandon its towing practices, and the city eventually adopted an ordinance that required substantially greater procedural controls. In addition, the small monetary recovery may be attributed in part to defendants' own actions. The settlement ultimately negotiated by counsel called for $40,000 to be set aside for possible disbursement; the number of successful claims actually filed was undoubtedly reduced by the city's self-created inability to produce detailed towing records, and its obstinacy in discovery.

Before reaching a final figure on fees, we realize that we are substituting ourselves for the district court, which must have a considerable amount of discretion, absent a mistake of law. *See Home Placement Service, Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1210, (1st Cir.1987). To the extent that the court need not keep books like an accountant, if we decide to set the fee ourselves we must respect the latitude that a district court is permitted. In matters involving fees a district judge may find himself in an uncomfortable situation. How much must he state when he is convinced, either that the diary entries are accurate and counsel were grossly inefficient, or, worse, that the entries are overblown, even deliberately so? There is, moreover, a wide difference in ability between various members of the bar; yet how quick will counsel be to complain if he is not given the going rate although the judge well knows that he took twice as long to try his

case as would have the lawyer who had appeared the week before? The judge then faces the particular annoyance of compensating counsel for having wasted his time. Every district judge would agree that this is by no means an uncommon occurrence.

■ To a certain extent a judge should be allowed to draw conclusions and make adjustments without full articulation. The court here could form an unfavorable impression of the modus operandi of a lawyer who paid so little attention to Fed.R.Civ.P. 11 that he sought $16,000 apiece for the owner and bailee of one automobile, however wrongfully taken, when the matter at issue was less than $100.[8] Counsel's argument, on multiplier, as to the alleged legal weaknesses of his case reflected either on his legal knowledge, or on his intelligence. We have never heard of presenting a court with five affidavits on the reasonableness of plaintiffs' billings. These were only straws, but they may well have been thought indicative. While the court failed to articulate criticisms justifying the very substantial reductions it made, we would accept reducing the 155.5 hours on the merits to 115. We confirm our principle of allowing considerable room for a district court's unexplained discretion, but beyond this, granted, a somewhat arbitrary figure, we would not go. To do more would seem to involve, on this record, the same unsupported assumptions that we have attributed to the district court. The requested fee for establishing the fee recovery we have adjusted from 51 hours to 30, and the other findings we also leave. This produces a total of $14,008.31.

In addition, plaintiffs are entitled to costs on this appeal, as well as an additional fee. Bearing in mind the aspects in which plaintiffs were not successful, we set this fee at $1,500.00.

*Vacated and remanded for entry of judgment consistent with this opinion.*

---

7. *See City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *see also Furtado v. Bishop,* 635 F.2d 915, 917–18 (1st Cir.1980).

8. It may be noted that counsel was willing to represent to the court that $50 was a reasonable settlement.

## APPENDIX A
### Summary of Request Submitted By Plaintiffs' Counsel

Attorney's Fees:

| | | |
|---|---|---|
| Merits: | 155.5 hrs. × $100/hr. = | $15,550.00 |
| Fees/Enforcement: | 51.0 hrs. × $100/hr. = | $ 5,100.00 |
| Requested Lodestar: | | $20,650.00 |
| Requested Multiplier: | $15,550 × 20% = | $ 3,110.00 |
| Total: | | $23,760.00 |

Paralegal/Law Clerk Fees:

| | | |
|---|---|---|
| Total: | 115.1 hrs. × $20/hr. = | $ 2,302.00 |

Unreimbursed Costs:

| | | |
|---|---|---|
| Total: | | $ 131.81 |
| Total Request: | | $26,183.31 |

## APPENDIX B
### Summary of the District Court's Analysis

Attorney's Fees:

| | | |
|---|---|---|
| Submitted Hours: | | 206.5 |
| Less Unnecessary Hours: | | 81.5 |
| Total Allowable Hours: | | 125.0 |
| Less Hours Allocated to Co-Counsel: | | 25.0 |
| Lead Counsel's Allowable Hours: | | 100.0 |
| Less Approx. Hours on Fees | | 30.0 |
| Total Allowable Hours for Merits: | | 70.0 |
| Award for Merits: | 70.0 hrs. × $90/hr. | =$6,300.00 |
| Award for Fees: | 30.0 hrs. × $60/hr. | =$1,800.00 |
| Approved Lodestar: | | $8,100.00 |
| Approved Multiplier: | | 0.00 |
| Total: | | $8,100.00 |

Paralegal/Law Clerk Fees:

| | | |
|---|---|---|
| Total: | 115.1 hrs. × $15/hr. | =$1,726.50 |

Unreimbursed Costs:

| | | |
|---|---|---|
| Total: | | =$ 131.81 |
| Total Allowed Fees and Costs | | $9,958.31 |