**Richard NELSON, Plaintiff,**

v.

**UNIVERSITY OF MAINE SYSTEM, Defendant.**

Civ. No. 95–0179–B.

United States District Court, D. Maine.

Oct. 21, 1996.

46

Richard Nelson, James Nixon, George Schelling, Gross, Minsky, Mogul & Singal, Bangor, ME, for Plaintiff.

Kate Debevoise, Patricia Peard, Paul Frinsko, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff, Richard Nelson, filed this suit against Defendant, University of Maine System (hereinafter "the University"), alleging violations of his federal rights under Title IX. On May 17, 1996, a jury found that the

University violated Dr. Nelson's Title IX rights by retaliating against him for speaking out on behalf of students who were sexually harassed or discriminated against on the basis of gender. The jury awarded Dr. Nelson 30,000 dollars in compensation for the University's retaliatory conduct and 50,000 dollars in punitive damages.

Plaintiff now requests that the Court award him certain equitable relief and attorneys' fees. Defendant also requests attorneys' fees and opposes Plaintiff's request for equitable relief and, further, requests that the Court reduce the amount of Plaintiff's attorneys' fees. Plaintiff, in turn, opposes Defendant's request for attorneys' fees.

The Court awards Plaintiff reasonable attorneys' fees and denies all other motions by the parties.

## I. Background

Dr. Nelson filed this employment discrimination case alleging that the University retaliated against him for supporting the sexual harassment claims of certain students. The University allegedly retaliated against Dr. Nelson by denying him tenure. A colleague of Dr. Nelson's, Dr. Edwin Jessiman, joined the suit in August, 1995. On April 23, 1996, the Court granted Defendant's Motion for Summary Judgment to dismiss Dr. Jessiman from the case. On May 17, 1996, a jury determined that Dr. Nelson had proven his claim and awarded him 30,000 dollars in compensatory damages and 50,000 dollars in punitive damages for a total of 80,000 dollars.

Dr. Nelson also claimed, before an arbitrator, that his collective bargaining agreement had been violated by the University's actions. The arbitrator determined that the agreement had been violated when the University employed the noncontractual criterion of collegiality in denying Dr. Nelson tenure. The arbitrator further determined that through his own actions Dr. Nelson had significantly injured his chances for tenure at the University. The arbitrator decided that the appropriate remedy for the situation was to separate the parties for a period of time and, therefore, ordered that Dr. Nelson be given unpaid leave for the 1994–1995 academic term. Upon the commencement of the 1995–1996 term, Dr. Nelson was allowed, under the arbitrator's order, to return to the University and reapply for a tenured position or for promotion. Dr. Nelson did not appeal the arbitrator's order and did not follow the University's procedures to reapply for tenure.[1]

The parties now move for attorneys' fees, and Plaintiff requests back pay as well as reinstatement or front pay. Plaintiff requests attorneys' fees and expenses in the amount of 149,395.78 dollars, plus an enhancement to reflect the contingent nature of the case.[2] Actual attorneys' fees attributable to hours billed by Plaintiff's counsel represent 141,301.20 dollars of the total fee and expense request.[3] Defendant requests attorneys' fees in the amount of 55,233.58 dollars.

---

1. There is significant disagreement between the parties regarding the barriers placed before Dr. Nelson in his attempt to reapply for tenure under the arbitrator's order. For instance, at some point during or after the controversy, the University changed Dr. Nelson's department, the Social Science Division, to the Division of Arts and Letters, thus changing the criteria for tenure. The parties also disagree about which individuals would have made the tenure determination and whether a bias against Dr. Nelson existed. Such controversies regarding the reapplication process are numerous. It is, however, uncontested that at some point Dr. Nelson decided he had no chance of success in the process and elected to discontinue his application efforts.

2. Plaintiff originally requested 146,110.50 dollars. *See* Plaintiff's Motion for Equitable Relief and Attorneys' Fees at 14 (June 20, 1996). To this amount 6,689.03 dollars was added, which

Plaintiff expended in response to Defendant's Motion for Judgment as a Matter of Law and New Trial. *See* Plaintiff's Supplemental Motion for Attorneys' Fees at 3 (July 17, 1996). Finally, 3,403.75 was subtracted, which Plaintiff admits relates to litigation of Dr. Jessiman's case. *See* Plaintiff Nelson's Reply Memorandum In Support of His Motion for Equitable Relief and Attorneys' Fees at 13 (July 31, 1996).

3. This figure is derived as follows: 1380.30 hours at 144,490.00 dollars (*see* Affidavit of George C. Schelling, Esquire at Exhibit A (June 19, 1996)); plus the amount attributable to the defense of Defendant's Motion for Judgment as a Matter of Law and New Trial: 57.05 hours at 6117.50 dollars (*see* Affidavit of James S. Nixon, Esquire at Exhibit A (July 17, 1996)); minus Plaintiff's "credit for services performed on behalf of Edwin Jessiman": 57.12 hours at 5902.55 dollars (*see* Affidavit of George C. Schelling, Esquire at

## II. Plaintiff's Attorneys' Fees

It is within the Court's discretion to award the prevailing party reasonable attorneys' fees. 42 U.S.C. § 2000e–5(k). The determination of what constitutes a reasonable fee award resides within the broad discretion of the district court. *E.g., Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 963–964 (1st Cir.1995). In the First Circuit, "the trial court's range of discretion is particularly broad." *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 6 (1st Cir.1993) (citing *United States v. Metropolitan Dist. Commission,* 847 F.2d 12, 14 (1st Cir.1988)). It is not necessary that the Court set forth an hour by hour analysis of its fee determination, and the Court will not do so here. *E.g., Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987). A clear explanation of the fee award is sufficient to support the exercise of judicial discretion. *Id.* (citing *Grendel's Den v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984)). Ultimately, the fee award must " 'seem[ ] plausible, given what has transpired in the litigation,' " and the trial court should award only those fees that are reasonable in relation to the results achieved. *Andrade v. Jamestown Housing Authority,* 82 F.3d 1179, 1191 (1st Cir.1996) (quoting *Metropolitan District Commission,* 847 F.2d at 18). It is the fee applicant who bears the burden of establishing entitlement to an award and is required to document, to the Court's satisfaction, the appropriate hours expended and billing rates for reimbursement. *Phetosomphone,* 984 F.2d at 6.

District courts generally employ the "Lodestar" method to calculate a reasonable attorneys' fee award. *E.g., Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992). Under this approach, the Court multiplies the number of hours "productively expended by counsel" by a reasonable hourly rate. *Id.* The Court relies on the parties in making its determination of both how many hours are

reasonable and the appropriate rate, however, the Court also "may bring to bear its knowledge and experience concerning both the cost of attorneys in its market area and the time demands of the particular case." *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984).

Plaintiff in this case requests attorneys' fees for roughly 1400 hours, or 141,301.20 dollars, of billable time. The Court finds that this is excessive and exceeds the number of hours reasonably necessary to litigate this case. Both the staffing and the number of hours expended on this case are inflated. This is not to say that the work claimed by Plaintiff was not done, but, rather, the Court finds that the time claimed in the fee request is more than should be expended on a case of this type.

The First Circuit requires that courts view with skepticism any claim that a case required the work of several lawyers to perform a single set of tasks. *Pearson v. Fair,* 980 F.2d 37, 47 (1st Cir.1992) (quoting *Lipsett,* 975 F.2d at 938). Over-staffing a case results in unproductive and duplicative efforts and creates excessive billing on a case. Plaintiff's fee request includes time billed by nine lawyers, three of whom charged over 100 hours to the case.[4] *Pearson* requires that the party requesting fees must demonstrate a compelling reason if a losing party is to be "taxed for the duplicative costs of associating a horde of attorneys" with a dispute. *Pearson,* 980 F.2d at 47. The Court finds that Plaintiff's team was over-staffed, and the Court, therefore, reduces counsel's request to reflect this determination.

After careful review of the lengthy affidavits submitted by Plaintiff in support of the fee request, the Court finds that there are many instances where Plaintiff devoted excessive time to various tasks. *See, e.g.,*

Exhibit A (June 19, 1996): Affidavit of James S. Nixon, Esquire at Exhibit A (June 20, 1996)); minus the additional amount attributable to Dr. Jessiman's case: 35.50 hours at a value of 3403.75 dollars (*see* Plaintiff Nelson's Reply Memorandum In Support of His Motion for Equitable Relief and Attorney's Fees at 13 (July 31, 1996)).

4. The nine individuals who worked on Plaintiff's case appear under the heading "Attorney" in the fee request. Some of these individuals may well be legal assistants (or paralegals), but in any event, the staffing still remains too heavy for a case of this type.

*Wilcox v. Stratton Lumber, Inc.*, 921 F.Supp. 837, 846 (D.Me.1996). For example, on January 29, 1996, James S. Nixon spent 7.60 hours preparing for certain unnamed depositions. *See* Affidavit of George C. Schelling, Esquire at Exhibit A (June 19, 1996). Three days prior to that, on January 26, 1996, Mr. Nixon spent 6.95 hours apparently doing the same thing. *Id.* There are many entries by Mr. Nixon and other attorneys, around the same time period, which also report deposition preparation. It is understandable that Plaintiff's attorneys would not want to be unprepared for depositions, however, the time reported for this task is excessive.[5] This is one example of several instances where Plaintiff's fee request reports more time than the Court believes necessary for a specific task or a group of related tasks. The Court, therefore, reduces Plaintiff's request to reflect this finding.

The Court is also not convinced that Plaintiff has successfully expunged all work attributable to the preparation of Dr. Jessiman's case from the fee request. The Court is aware that much of the work done for Dr. Jessiman was in support of Dr. Nelson's successful case, however, there remain certain entries in the fee request which the Court determines are more aptly attributed to Dr. Jessiman's case. For example on July 28, 1995, George C. Schelling undertook the following tasks:

> Document review; office conference; memorandum to file re: *inclusion of additional plaintiff;* telephone conference with Richard Nelson; memorandum to file.

Affidavit of George C. Schelling, Esquire at Exhibit A (June 19, 1996) (emphasis added). This and many other entries in the billing records can be read as referring to Dr. Jessiman's case.[6] There is not enough information provided to determine if the entries in question relate solely to Dr. Nelson's case.

It is certainly striking that such a small percentage of the overall bill was attributed by Plaintiff to legal work on Dr. Jessiman's case. Plaintiff deducted less than 10,000 dollars from the overall bill of approximately 150,000. This ratio is suspect. Plaintiff clearly bears the burden of demonstrating its entitlement to attorneys' fees, and that burden has not been met on this issue. The Court, therefore, reduces the fee award to more accurately reflect a realistic apportionment between Dr. Nelson's and Dr. Jessiman's cases.

During the course of this litigation, one of Plaintiff's attorneys, Mr. Nixon, increased his hourly billing rate from 55 dollars to 100 dollars. The Court finds that this increase is excessive in the context of the attorneys' fees to be paid by the Defendant. Mr. Nixon billed well over 800 hours to this case. His time alone amounts to more than 80,000 dollars of the fee request. Defendant should not be required to pay for this time at an hourly rate which almost doubled during the case. While it is certainly reasonable for an attorney's hourly fee to increase as he gains experience and knowledge, the increase in Mr. Nixon's rate should not be borne by the Defendant in this instance. The Court reduces the fee award accordingly.

■ Based on the above determinations, the Court will not award the full 141,301.20 dollars requested by Plaintiff. The Court is not required, and declines to, set forth a line by line explanation of its fee award. *See Jacobs*, 825 F.2d at 562. In fact, such an undertaking would be impossible in this case given the nonspecific descriptions which Plaintiff used in its billing entries. Instead the Court reduces Plaintiff's request by approximately one third to 94,000.00 dollars, which brings Plaintiff's request to a more appropriate level for a case of this nature.

---

5. It may be that Plaintiff's counsel was preparing for numerous depositions over this time period, but with the record in its current state, the Court cannot tell if there were five upcoming depositions or a dozen. Given that Plaintiff has the burden of supporting its fee request by providing detailed records, the Court must assume the facts in Defendant's favor where they are unclear. Here the Court assumes that excessive time was spent preparing for these various depositions.

6. Defendant attempted to eliminate the work done on Dr. Jessiman's case from the fee request. *See* Affidavit of James S. Nixon, Esquire at Exhibit A (June 20, 1996). However, for the entry quoted above, it appears from Plaintiff's submissions that no portion of the 4.50 hours which Mr. Nixon spent on the listed tasks was subtracted.

Plaintiff also submits certain costs with its fee application, amounting to 8094.58 dollars.[7] All such costs will be assessed in the usual manner by the Clerk of the Court. *See Wilcox,* 921 F.Supp. at 850.

██ In addition, the Court finds that, contrary to Plaintiff's request, this case does not fall within the class of extremely unusual cases where an enhanced attorneys' fee award is warranted. *See Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

### III. Equitable Relief

In addition to attorneys' fees, Plaintiff requests equitable relief in the form of back pay, reinstatement as a tenured professor, and/or front pay. The Court denies Plaintiff's request for equitable relief.

### A. Back Pay

██ To determine the remedies available for a violation of Title IX, this Court applies the principles and standards set forth in Title VII of the Civil Rights Act of 1964. *E.g., Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988). One of the remedies available is an award of back pay to Plaintiff. *E.g., Wilcox,* 921 F.Supp. at 842–843. The decision whether to award equitable relief in the form of back pay is left to the sound discretion of the Court. *E.g., id.* at 843.

██ In this case, Dr. Nelson was on leave from the University for the 1994–1995 academic year pursuant to an order of the arbitrator who presided over Dr. Nelson's contract dispute. Thus, the University was following the arbitrator's ruling when it placed Dr. Nelson on an unpaid leave of absence for that year. The Court indicated in this case that once the parties choose an arbitration forum under a collective bargaining agreement, the Court will defer to the arbitrator's sound discretion " 'as long as the Arbitrator is even arguably construing or

applying the Contract and acting within the scope of his authority.' " *See Nelson v. University of Maine System,* 914 F.Supp. 643, 651 (D.Me.1996) (quoting *Advest Inc. v. McCarthy,* 914 F.2d 6, 9 (1st Cir.1990)). There is no allegation in this case that the arbitrator was acting outside the scope of his authority in ordering that Dr. Nelson take a year of unpaid leave. Dr. Nelson, in fact, did not appeal the arbitrator's decision. The arbitrator's decision was certainly reasonable under the circumstances of this case, and the University should not now be penalized for acting in conformity with that decision. The collective bargaining agreement is a valid arm's length contract, and it would be disruptive to the employment relationship and inappropriate for the Court to award back pay to Dr. Nelson when the University was proceeding as required by its contractual relationship with the Plaintiff. Dr. Nelson's request for back pay is denied.

### B. Reinstatement and Front Pay

██ The Court, in its discretion, may also order the equitable remedies of reinstatement and/or front pay for Plaintiff. *See* 42 U.S.C. § 2000e–5(g). Dr. Nelson requests that the Court reinstate and award him tenure at the University, or if reinstatement is not appropriate, award him front pay in the amount of 971,173 dollars. Dr. Nelson's request has little merit because he previously failed to reapply for tenure at the University as suggested by the arbitrator.

██ In a case such as this, the Plaintiff has a clear duty to mitigate his damages. 42 U.S.C. § 2000e–5(g); *see, e.g., Hazel v. U.S. Postmaster General,* 7 F.3d 1, 5 (1st Cir.1993). The arbitrator who decided Dr. Nelson's contract claim states specifically in his order that Dr. Nelson could return to the University and reapply for tenure and/or promotion. Plaintiff claims that he failed to do this for a number of reasons, including the change in department structure and the past discrimination against him by the University.

---

7. This figure is derived as follows: 2,019.84 dollars for disbursements (*see* Affidavit of George C. Schelling, Esquire at Exhibit A (June 19, 1996)); plus 5,503.21 for additional disbursements previously billed (*id.*); plus 571.53 for disbursements attributable to the defense of Defendant's Motion for Judgment as a Matter of Law and New Trial (*see* Affidavit of James S. Nixon, Esquire at Exhibit A (July 17, 1996)).

Even assuming that all of Plaintiff's claimed hurdles in fact existed, it was still incumbent upon him to submit to the tenure application process and thus allow the University the opportunity to rectify its error.

Because he did not fully participate in the University's tenure application process, Plaintiff failed to mitigate his damages. The Court, therefore, declines to order the equitable remedies of reinstatement or front pay.

### IV. Defendant's Attorneys' Fees

The Court will award attorneys' fees to a successful defendant in a Title IX case if it determines that the plaintiff's claim was frivolous, unreasonable, or groundless, or if the Court determines that the plaintiff continued to litigate the case after it became clear that the case was frivolous, unreasonable, or groundless. *See, e.g., Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) ("The plaintiff's action must be meritless in the sense that it is groundless or without foundation."). The University requests attorneys' fees for its success in the case brought by Dr. Jessiman.

Dr. Jessiman's claim was dismissed by the Court on April 23, 1996. *Nelson v. University of Maine System*, 923 F.Supp. 275, 281 (D.Me.1996). It is unnecessary to recount the details of Defendant's Summary Judgment Motion against Dr. Jessiman's claim or the Court's determination in that case. It is sufficient to say that the Court did not dismiss that claim because it was frivolous, unreasonable, or groundless. The Court stated that Dr. Jessiman failed to show that the University undertook "adverse employment action" against the Professor, thus Dr. Jessiman could not establish a *prima facie* case. *Id.* at 283–284. The fact that summary judgment is granted in a case does not mean that the case was frivolous, unreasonable, or groundless. Dr. Jessiman was not abusing the legal system with his claim and an award of legal fees to the Defendant is not warranted by the circumstances of his claim.

### V. Conclusion

The Court orders that Defendant pay 94,-000.00 dollars in attorneys' fees, as well as the related costs, to Plaintiff. All other motions are denied.

*SO ORDERED.*