[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION RE PLAINTIFF'S APPLICATIONFOR ATTORNEY'S FEE AWARD UNDER CIVIL RIGHTS ATTORNEY'S FEESAWARD ACT OF 1976 AND FOR COSTS INCURRED (No. 180)
The successful plaintiff in this civil rights action has applied for an award of attorney's fees and costs pursuant to42 U.S.C. § 1988. 42 U.S.C. § 1988(b), an important component of our federal civil rights laws, provides that, "In any action to enforce a provision of [inter alia, 42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The difficult task confronting this court is the determination of just what attorney's fee is "reasonable" in this long and hard-fought case. CT Page 5977
The context of this fee application can be briefly described since the merits of the underlying litigation are no longer before the court. On the evening of June 17, 1991, the plaintiff's decedent, Anthony H. Laudano ("Laudano"), was shot by Giro Esposito ("Esposito"), a New Haven police officer. Laudano was driving his automobile down a New Haven Street at the time of the shooting, and Esposito was on foot, accompanied by another New Haven police officer named Thomas Herbert ("Herbert"). Laudano died the next day.
On March 13, 1992, Frank J. Laudano, the administrator of Laudano's estate, commenced this action against the City of New Haven (the "City"); Nicholas Pastore ("Pastore") the New Haven Chief of Police at the time of the shooting; Esposito; and Herbert. The plaintiff was originally represented by Attorney William T. Gerace. On April 21, 1992, however, Attorney A. Paul Spinella filed his appearance for the plaintiff. Attorney Spinella and his partner, Attorney David K. Jaffe, were responsible for the case thereafter. There is no evidence that Attorney Gerace played any significant role after the date of Attorney Spinella's appearance.
After a lengthy pretrial process, the case was tried to verdict in 1997. Attorney Jaffe was the lead attorney for the plaintiff throughout the trial. He was second-chaired by an associate, Attorney Christian Moran. Attorney Spinella appeared in court on a handful of occasions but appeared to be primarily an observer.
Jury selection began on October 30, 1997. The verdict was delivered on December 23, 1997, at 6:40 in the evening, following two Chip Smith charges. The trial was subject to several interruptions because of other matters on the court's schedule. Counsel were, however, required to spend much of the time that court was not in session — including both "off days" and evenings working on numerous discovery matters related to the trial. There were eight days of jury selection and pretrial motions, followed by sixteen days of trial (including two days of jury deliberation).
Although the plaintiff originally claimed several theories of liability, the case went to the jury on four counts — one against each defendant — asserting liability under 42 U.S.C. § 1983. The plaintiff alleged that Esposito used excessive force against CT Page 5978 Laudano; that Herbert failed to stop Esposito's use of force; and that the City and Pastore inadequately trained Esposito in the use of force. The jury returned a defendant's verdict in favor of Herbert and plaintiff's verdicts against Esposito, the City, and Pastore. Each plaintiff's verdict was for compensatory damages of $250,000. Punitive damages were sought against each defendant, but none were awarded. The jury was instructed that any compensatory damages awarded could be collected only once. The total damages awarded, consequently, were $250,000 in compensatory damages. The plaintiff is a "prevailing party" for purposes of 42 U.S.C. § 1988 (b).
On February 23, 1998, plaintiff's counsel filed the application for attorney's fees and costs that is now before the court. The defendants filed a lengthy opposition on April 6, 1998. Plaintiff's counsel then filed a detailed reply on April 28, 1998. The application was heard on May 11, 1998. No testimonial evidence was submitted. The parties, instead, submitted numerous affidavits, briefs, and oral arguments.
The principal task for the court is the determination of a reasonable attorney's fee. The plaintiff's attorneys claim a total of $348,792.50 for the trial and pretrial proceedings and the preparation of their initial fee application plus a supplemental figure of $8,052 for time spent in preparing their reply to the defendants' opposition to their fee application. Their principal request can be broken down as follows:
 Attorney Jaffe — 912.65 hrs @ $250/hr $228,162.50 Attorney Spinella — 215.05 hrs @ $250/hr 62,537.50 Attorney Moran — 329.55 hrs @ $150/hr 49,432.50 Attorney Tirrell — 48.60 hrs @ $150/hr 7,290 Paralegal — 31 hrs @ $50/hr 1,550 Total hours — 1,537.85 $348,972.50
The defendants attack the reasonableness of both the principal hourly rates and the hours themselves. The defendants' presentation is somewhat confusing and complicated by some mathematical errors, but as I understand it, their position, clarified at argument, is as follows:
 Attorney Jaffe — 290.5 hrs @ $175/hr $50,837.50 Attorney Spinella — 15 hrs @ $175/hr 2,625 Attorney Moran — 15 hrs @ $150/hr 2,250 Attorney Tirrell — 15 hrs @ $150/hr 2,250 CT Page 5979 Paralegal — 31 hrs @ $50/hr 1,550 Total hours — 366.5 $59, 512.50
As these tabular summaries indicate, the reasonableness of the hours and hourly rate claimed for the paralegal is conceded. The reasonableness of the hourly rates claimed for Attorneys Moran and Tirrell is conceded as well, but the reasonableness of their hours is not. The reasonableness of both the hours and hourly rates claimed for Attorneys Jaffe and Spinella are disputed.
It is well established that, in determining a reasonable attorney's fee under 42 U.S.C. § 1988(b), the court must calculate a "lodestar". A "lodestar" is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blanchard v.Bergeron, 489 U.S. 87, 94 (1989). See Quaratino v. Tiffany Co.,129 F.3d 702, 704 n. 1 (2d Cir. 1997). The court must consequently determine both the number of hours reasonably expended on this litigation and the reasonable hourly rate for the attorneys involved.
The question of the reasonable hourly rate is by far the easier of these two determinations. As mentioned, it is conceded that $150 an hour is appropriate for Attorneys Moran and Tirrell. These are associates with good credentials but little experience. Attorneys Jaffe and Spinella are partners with almost twenty years of trial experience each. To award these experienced attorneys, who did a fine job in an incredibly challenging case, only $25 an hour more than their young associates, as the defendants argue that the court should do, would be inappropriate. The voluminous materials submitted to the court, in addition to the court's own experience in making fee awards, make it clear that $250 an hour is reasonable compensation for attorneys of the ability and experience of Attorneys Jaffe and Spinella. That hourly rate is consequently adopted.
The question of the reasonable number of hours expended is far more difficult. The court has considered each of the twelve factors itemized in Hensley v. Eckerhart, 461 U.S. 424, 430 n. 3 (1983). These factors are:
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of CT Page 5980 employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Id. The court has also considered the underlying purpose of attorney's fee awards in civil rights cases. As the Supreme Court has explained, "In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." City ofRiverside v. Rivera, 477 U.S. 561, 578 (1986).
While the court has a responsibility to determine the reasonableness of a fee award, its role should not be confused with that of Monday morning quarterback. It is always easy to say, in the aftermath of a verdict, that the same result could have been obtained with more efficient work, but this would hardly be fair to the successful attorney. A high stakes trial such as this one is a venture into the unknown. The twists and turns of the trial cannot always be predicted in advance. The successful advocate must be prepared for all eventualities — not just those that actually arise. Consequently, much preparation is necessary. This was a death case brought against the police. Suing the police is a notoriously difficult task. Plaintiffs' verdicts in these cases cannot be expected to just happen. If they are to happen at all, counsel must be expected to put in long hours. This was a particularly difficult case because it necessarily required a reconstruction of a sharply disputed sequence of events from forensic evidence. Beyond that, the plaintiff was obliged to prove to the jury that the police officers involved were less than truthful in their testimony. Few tasks that an attorney is called upon to perform in a professional lifetime are more challenging. The court will not fault plaintiff's counsel for overpreparation in such a case.
For these reasons, it would be inappropriate for the court to make substantial downward adjustments of the diary-supported bills in this case without some articulated reason. See Jacobs v.Mancuso, 825 F.2d 559, 560 (1st Cir. 1987). However, carte blanche is not necessarily the appropriate judicial attitude CT Page 5981 either. The court has carefully scrutinized the billing records submitted by plaintiff's counsel and makes the following determinations.
Attorney Jaffe, as mentioned, was the lead attorney in the case. He put in long hours, but these hours were reasonably required by the case. His principal bill for 912.65 hours at $250 an hour is reasonable.
Attorney Spinella's hours are less easily justified. As mentioned, His role during his appearances in court appeared to be primarily that of observer. (Attorney Jaffe was already being second chaired by Attorney Moran.) I understand that it was reasonable for Attorney Jaffe to seek the advice of his colleague behind the scenes, but in scrutinizing Attorney Spinella's bills, the court comes away with a strong sense that those bills reflect an unreasonable duplication of effort. The court must necessarily rely on its judgment as to what is reasonable. An hour-by hour fee analysis "would be unduly burdensome and would leave the judge so deluged with details that the is unable to view the claims for fees in perspective.'" Jacobs v. Mancuso, supra,825 F.2d at 562. (Citation omitted.) Under all of the circumstances, 50 hours of Attorney Spinella's time at $250 an hour was reasonably required for the case.
The court views the time billed for Attorney Moran as reasonable. Although the defendants question the need for a second chair, a second chair in this difficult trial was reasonable and consistent with the standard of the profession. Attorney Moran's bill of 329.55 hours at $150 an hour is reasonable.
Attorney Tirrell's role in this case is less clear. Her billing records submitted to the court reflect that she did much necessary research, letter writing, and telephone conferencing with defense counsel but some of these hours seem clearly excessive. In addition, she spent several hours preparing and reviewing pleadings that were already being prepared and reviewed by other counsel. Under all of the circumstances, she is entitled to 30 hours at $150 an hour.
As mentioned, the defendants do not oppose a paralegal bill of 31 hours at $50 an hour.
The court consequently determines that the following principal award may be given to plaintiff's counsel: CT Page 5982
 Attorney Jaffe — 912.65 hrs @ $250/hr $228,162.50 Attorney Spinella — 50 hrs @ $250/hr 12,500 Attorney Moran — 329.55 hrs @ $150/hr 49,432.50 Attorney Tirrell — 30 hrs @ $150/hr 4,500 Paralegal 31 hrs @ $50/hr 1,550
Total hours — 1,353.20 $296,145
The supplemental request for fees must now be considered. This, as mentioned, is for hours preparing the reply to the defendants' opposition to the fee application. It does not include the hearing itself. The court is inclined to be much less generous with this item. Billing in excess of $8,000 on a reply is clearly excessive. I understand that plaintiff's counsel felt it necessary to obtain additional affidavits, given the defendants' opposition, but the extent of the effort here was plainly gilding the lily. Under all of the circumstances, $1,000 for the reply is reasonable. In addition, however, Attorney Jaffe is entitled to be reimbursed for his time spent at the hearing itself. This was approximately two hours. Attorney Jaffe is therefore awarded $500 for his time at the hearing.
In summary, plaintiff's counsel are awarded $296,145 for their principal application, $1,000 for their supplemental application, and $500 for the hearing. The total fee award is consequently $297,645.
The issue of costs must now be addressed. The plaintiff's original bill of costs was for a total of $33,415.38. However, certain claims relating to expert witness fees were subsequently withdrawn prior to argument. The plaintiff has submitted a revised bill of costs in the amount of $13,642.40, accompanying this concession. The only significant remaining legal dispute involves the issue of the cost of depositions of witnesses who did not testify at trial.
28 U.S.C. § 1920(2) permits the court to tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." It is well established that deposition transcripts are included in the term "stenographic transcript." Hudson v. NabiscoBrands. Inc., 758 F.2d 1237, 1242 (7th Cir. 1985). The crux of the defendants' claim, as I understand it, is that the deposition transcripts here were not "necessarily obtained for use in the case," since the witnesses in question were never called to the CT Page 5983 stand during the trial. This issue has been the subject of lively controversy in the federal courts. See Hudson v. Nabisco Brands.Inc., supra, 758 F.2d at 1243 and authorities cited therein. Most modern courts permit the taxation of deposition costs in such instances. Hudson, the most well reasoned decision on the subject, explains that, "The determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use." Id. Consequently, "costs may be awarded for deposing a witness who is not called at trial as long as the deposition was necessary when taken." Finchum v.Ford Motor Co., 57 F.3d 526, 534 (7th Cir. 1995). See Zotos v.Lindbergh School District, 121 F.3d 356, 363 (8th Cir. 1997);Cherry Creek School District v. Voelker, 859 P.2d 805, 813 (Colo. 1993).
The depositions in question here were an integral part of the preparation for trial and a necessity for the proper preparation for trial and for the orderly and efficient presentation of evidence. See Cherry Creek School District v. Voelker, supra,859 P.2d at 814. The costs claimed for them are allowed.
The plaintiff's revised bill of costs in the amount of $13,642.40 is consequently granted in full.
In conclusion, the plaintiff is awarded attorney's fees of $297,645 and costs of $13,642.40.
Jon C. Blue Judge of the Superior Court